UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ALICIA JAMES,                                    Docket No.: 16-CV-674 (PKC)(PK)

                              Plaintiff,

          -against-


AMERICAN AIRLINES, INC.

                              Defendant.
-------------------------------------------------------------------X


**MEMORANDUM OF LAW
IN SUPPORT OF
AMERICAN AIRLINES, INC.'S
<u>MOTION TO DISMISS</u>**


*Of Counsel:*

*David S. Rutherford, Esq.*
*L. Diana Mulderig, Esq.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS ............................................................................1

STANDARD OF REVIEW ...........................................................................3

ARGUMENT.............................................................................................4

    **POINT I**

    THE PLAINTIFF CANNOT SUSTAIN A CLAIM UNDER 42 U.S. CODE
    § 2000(a) (TITLE II).......................................................................5

    **POINT II**

    THE PLAINTIFF'S CAUSE OF ACTION IS PREEMPTED BY THE
    FEDERAL AVIATION ACT OF 1958.................................................9

    **POINT III**

    THE PLAINTIFF'S CAUSE OF ACTION FOR IMPROPER SERVICE
    IS PREEMPTED BY THE AIRLINE DEREGULATION ACT OF 1978.................13

    **POINT IV**

    THE PLAINTIFF HAS SUFFERED NO DAMAGES IN THIS CASE AND,
    THEREFORE, HER COMPLAINT MUST BE DISMISSED....................................20

CONCLUSION.........................................................................................22

*i*

# TABLE OF AUTHORITIES

**Cases:**

Adamsons v. American Ailrines,
   58 N.Y. 2d 42, 49 (1982)..............................................................................11, 12

Akins v. Glen Falls City School,
   53 N.Y.2d 325, 441 N.Y.S.2d 644 (1981)..........................................................20

Air Transport Association of America Inc. v. Cuomo,
   520 F.3d 218, 224 (C.A.2, 2008)................................................................10, 17

Bell Atlantic Corp. v. Twombly,
   127 S.Ct. 1955, 1960 (2007)................................................................................3

Bolt Elec., Inc. v. City of New York,
   53 F.3d 465, 469 (2d Cir. 1995)...........................................................................3

Cartee Ind. Inc. v. Sum Holding L.P.,
   949 F.2d 42, 46-48 (2d Cir. 1991).......................................................................2

Farash v. Continental Airlines Inc.,
   2008 WL 2276660 (S.D.N.Y. 2008)........................................................14, 16, 18

Fondo v. Delta Airlines, Inc.,
   2001 WL 604039 (S.D.N.Y. 2001).................................................................20, 21

Galbut v. American Airlines,
   27 F.Supp.2d 146 (E.D.N.Y. 1997)..........................................................16, 18, 19

Greene v. B.F. Goodrich Avionics Sys., Inc.,
   409 F.3d 784, 795 (6th Cir. 2005).....................................................................10

Hanig v. Yorktown CSD,
   384 F.Supp.2d 710 (S.D.N.Y. 2005).....................................................................2

Hirsh v. Arthur Andersen & Co.,
   72 F.3d 1085, 1088 (2d Cir. 1995).......................................................................4

Hishon v. King & Spaulding,
   467 U.S. 69, 73, (1984)........................................................................................3

H.J. Inc. v. Northwestern Bell Tel. Co.,
    492 U.S. 229, 249-50 (1989)........................................................................................3

Huggar v. Nw. Airlines, Inc.,
    No. 98 C 594, 1999 WL 59841, at 4 (N.D. Ill. Jan. 27, 1999)........................6, 7

Kalantar v. Lufthansa German Airlines,
    402 F.Supp.2d 130 (D.D.C. 2005)........................................................................6, 7

Khan v. American Airlines,
    2008 WL 5110852 (S.D.N.Y. 2008)....................................................................17, 18

Kush v. City of Buffalo,
    59 N.Y.2d 26, 462 N.Y.S.2d 831 (1983)....................................................................20

Lee v. State of N.Y. Dep't of Corr. Servs.,
    No. 97 Civ. 7112, 1999 WL 673339, at *2 n.4 (S.D.N.Y. 1999)...............................2

Morales v. Trans World Airlines, Inc.,
    504 U.S. 374 (1992)....................................................................................................14

McDonnell Douglas Corp. v. Green,
    411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)..............................................8

McLee v. Chrysler Corp.,
    109 F.2d 130, 135 (2d Cir. 1997)................................................................................8

Miller v. Amusement Enters.,
    394 F.2d 342, 349 (5th Cir. 1968)..............................................................................6

Nazarian v. Compagnie Nationale Air France,
    989 F.Supp. 504 (S.D.N.Y. 1998))..........................................................................20

Purisima v. Tiffany Entm't,
    No. 09 CV 3502 NGG LB, 2014 WL 3828291, at 1 (E.D.N.Y. June 20, 2014)...............7

Rombom v. United Air Lines, Inc.,
    867 F.Supp.214 (S.D.N.Y. 1994)....................................................15, 16, 18, 19

Ruta v. Delta Airlines, Inc.,
    322 F.Supp.2d 391, 397 (S.D.N.Y. 2004)..........................................................11, 15

Solomon v. The City of New York,
    66 N.Y.2d 1026, 499 N.Y.S. 2d 392 (1985)........................................................20

Smith v. Local 819 I.B.T. Pension Plan,
    291 F.3d 236, 240 (2d Cir. 2002)....................................................................4

Stone ex rel. Estate of Stone v. Frontier Airlines,
    256 F.Supp.2d 28, 42 (D.Mass., 2002)..........................................................10

U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobas,
    No. 98 Civ. 3099, 2001 WL 30075, at *2 (S.D.N.Y. Mar. 27, 2001)..................2

Welsh v. Boy Scounts of America,
    993 F.2d 1267, 1269 (7th Cir. 1993)..............................................................6

Weiss v. El A. Israel Airlines, Ltd.,
    471 F.Supp.2d 356 (S.D.N.Y. 2006)..............................................................20

Williams v. R.H. Donnelly Corp.,
    368 F.3d 123, 126 (2d Cir. 2004)................................................................7, 8

## Statutes, Rule & Regulations

Airline Deregulation Act of 1978.......................................................................1, 4, 22

Federal Aviation Act of 1958..........................................................................1, 9, 22

Rule 12(b)(6) of the Federal Rules of Civil Procedure......................................1, 3, 22

U.S. Code § 2000(a)....................................................................................1, 3, 4, 5

U.S. Const., Art VI, cl 2....................................................................................14

42 U.S.C. § 1981...............................................................................................7

49 U.S.C. §§ 40103(a)(1), 41713(b)(1), 44701(a)(5), 44902(b)............................10, 15

## Authoritative Texts

Prosser & Keeton On Torts, Section 30, at 164 (5th Ed. 1984).....................................20

## PRELIMINARY STATEMENT

The defendant, **AMERICAN AIRLINES, INC.** ("American Airlines"), by and through its attorneys, RUTHERFORD & CHRISTIE, LLP, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure. American Airlines moves for dismissal on the ground that the plaintiff has failed to make out any viable cause of action in her complaint, specifically a claim under 42 U.S. Code § 2000(a). In addition, the plaintiff's causes of action are preempted by the Federal Aviation Act in 1958 and the Airline Deregulation Act of 1978. Based on these Acts, the plaintiff cannot make out a *prima facie* case of negligence against the defendant.

The plaintiff originally filed a complaint with the New York State Division of Human Rights. After a thorough investigation, the case was dismissed after finding no merit to the plaintiff's claims. The plaintiff then commenced this action in the United States District Court for the Eastern District of New York, alleging a violation of 42 U.S. Code § 2000(a) and apparently seeking reimbursement for the costs of filing the lawsuit. The plaintiff has simply failed to plead a recognized legal theory against American Airlines upon which relief may be granted. Also submitted in support of the instant motion is the Declaration of L. Diana Mulderig, with exhibits annexed thereto and the Notice to *Pro Se* Litigant.

## STATEMENT OF FACTS

For the purposes of this motion, only, American Airlines will accept the allegations contained within the plaintiff's complaint as true. According to the Complaint, on August 17, 2015 the plaintiff was a passenger on American Airlines Flight No. 120, traveling from Las Vegas, Nevada to New York, New York. (Exhibit "A," p. 2). The plaintiff was made uncomfortable by another

passenger "bang[ing] on the back of [her] seat." (Exhibit "A," p. 2). This encounter lead to an "exchange of words," which, admittedly, involved the plaintiff using the "F-word." (Exhibit "A," p. 2 and Exhibit "B,[1]" p. 2). The other passenger did not use any profanity during this verbal altercation. (Exhibit "B," p.2)

The plaintiff requested a seat change and the flight attendants granted her request, finding her another seat in another part of the cabin. (Exhibit "A," p. 2). At a later point, two flight attendants approached the plaintiff and advised that, as per the Captain's directive, she would be removed from the aircraft if she continued cursing. (Exhibit "A," p. 2). The captain of the aircraft remained in the cockpit the entire flight. (Exhibit "B," p. 2)

There are no further allegations as to any additional conversations between the American Airlines representatives and the plaintiff after the plaintiff's cursing at another passenger was addressed. (Exhibits "A," and "B."). There are no allegations that American Airlines representatives used any racial slurs, derogatory language or inappropriate gestures towards the plaintiff. (Exhibits "A," and "B.") The plaintiff remained on the aircraft and was transported to New York, New York. She was not denied any food or drink accommodations.

On August 21, 2015, the plaintiff filed a verified complaint with the New York State Division of Human Rights. *See*, Exhibit "B." After a thorough investigation, which apparently

---

[1] In assessing the legal sufficiency of a claim, the court may consider those facts alleged in the complaint, documents attached as an exhibit thereto or incorporated by reference. . . and documents that are integral to plaintiffs' claims, even if not explicitly incorporated by reference." Hanig v. Yorktown CSD, 384 F.Supp.2d 710 (S.D.N.Y. 2005); Cartee Ind. Inc.v. Sum Holding L.P., 949 F.2d 42, 46-48 (2d Cir. 1991); Lee v. State of N.Y. Dep't of Corr. Servs., No. 97 Civ. 7112, 1999 WL 673339, at *2 n.4 (S.D.N.Y. 1999); U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobas, No. 98 Civ. 3099, 2001 WL 300735, at*2 (S.D.N.Y. Mar.27, 2001 ) ("The Court can consider documents referenced in the Complaint and documents that are in the plaintiffs' possession or that the plaintiffs knew of and relied on in bringing their suit.").

included an interview of the plaintiff, the Division made a finding of "No probable Cause." *See,* Exhibit "B." The Division of Human Rights found that the plaintiff was not denied any of the accommodations, advantages, facilities or privileges associated with American Airlines. *See,* Exhibit "B." Finally, the investigation did not uncover sufficient evidence to establish a causal nexus between American Airlines' treatment of the plaintiff and her race/color. *See,* Exhibit "B."

After the Division of Human Rights issued its Decision, the plaintiff brought the instant lawsuit in federal court, alleging that she was harassed, intimidated and humiliated. (Exhibit "A," pp. 2-3) The plaintiff does not allege any physical or mental damages. (Exhibit "A") The complaint merely seeks the costs of the filing of the instant action and a "sanction" to American Airlines a claim under 42 U.S. Code § 2000(a) (Exhibit "A")

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249-50 (1989), *quoting,* Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). The district court should grant a motion to dismiss, after viewing the plaintiff's allegations in a favorable light, if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995). The plaintiff must plead facts sufficient "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1960 (2007). Factual allegations must be sufficient to "raise a right to relief above the speculative level. Bell Atlantic Corp, 127 S.Ct, 1955, 1965 (2007). In general, "conclusory allegations or legal conclusions masquerading as factual conclusions will

3

not suffice to prevent a motion to dismiss." Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002); Hirsh v. Arthur Andersen & Co., 72 F.3d 1085, 1088 (2d Cir. 1995).

## **ARGUMENT**

The plaintiff in this case appears to allege that American Airlines "discriminated, humiliated and threatened her." Simply put, the plaintiff cannot sustain any cause of action against American Airlines because she was treated in a manner that was different than what was warranted by her prior actions. In sum, the plaintiff swore at another passenger, was warned that she could not continue swearing at passengers and then was transported to New York. In her complaint, the plaintiff's one cause of action seeks relief under 42 U.S. Code §2000(a) (Title II). However, it is respectfully submitted that this code does not apply to travel on an American Airlines aircraft and, even if analyzed under §1981, her claim still fails. Therefore, the plaintiff cannot sustain a viable cause of action under any theory of liability. Accordingly, her case should be dismissed.

In addition, the plaintiff's claims are preempted by the Federal Aviation Act in 1958 and the Airline Deregulation Act of 1978. In terms of the Federal Aviation Act of 1958, the plaintiff was deemed a "safety concern," thereby giving the Captain the right to "warn" her that her behavior would not be tolerated as it endangered the other passengers on the flight. The fact is that the plaintiff has admitted to the behavior that was reported to the Captain and, therefore, no claims of discrimination can be lodged against the flight attendants in this case. The flight attendants' version of events is consistent with the plaintiff's and they were not fabricating a story due to any racially motivating bias. The plaintiff cannot prove otherwise.

Further, the flight attendants' actions which deal with seating accommodations of passengers, including the plaintiff, must be deemed a "service" under the Airline Deregulation Act of 1978. The

4

flight attendants were addressing the seating arrangements between two passengers. There is no indication here of the flight attendants using racial slurs, foul or discriminatory language directly addressed at the plaintiff. Rather, the only claim appears to be that the flight attendants advised that the plaintiff could be removed from the aircraft if she continued cursing. This, in an of itself, does not lend itself to a claim based on race and, accordingly, falls strictly within the purview of the service of seating of passengers. Accordingly, the plaintiff's complaint should be dismissed in its entirety.

## POINT I

### The Plaintiff Cannot Sustain a Claim Under 42 U.S. Code §2000(a) (Title II)

The plaintiff cannot sustain the main claim for which she has brought the instant lawsuit, namely, 42 U.S. Code §2000(a) (Title II). Title II affords a person with protection in a place of public accommodation. Each of the following establishments which serves the public is a place of public accommodation within the meaning of the Code's subchapter and is defined as follows:

> (1) any inn, hotel, motel, or other establishment which provides lodging to transient guests, other than an establishment located within a building which contains not more than five rooms for rent or hire and which is actually occupied by the proprietor of such establishment as his residence;
> (2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including but not limited to, any such facility located on the premises of any retail establishment; or any gas station;
> (3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and
> (4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment. *See,* 42 U.S. § 2000a(b).

This case is directly on point with <u>Huggar v. Nw. Airlines, Inc.</u>, No. 98 C 594, 1999 WL

5

59841, at 4 (N.D. Ill. Jan. 27, 1999) where a plaintiff was removed from an aircraft after threatening

another passenger and using profanities. The plaintiff brought suit, alleging a violation of Title II.

In analyzing the case, the Court noted the following:

> Title II of the Civil Rights Act of 1964 expressly prohibits discrimination or segregation in places of public accommodation. 42 U.S.C. § 2000. The statute, however, "governs only an entity that: (1) 'serves the public' and (2) may be classified as an 'establishment,' 'place' or 'facility.' Welsh v. Boy Scouts of America, 993 F.2d 1267, 1269 (7th Cir.1993) (*citing,* 42 U.S.C.§2000a(b)). Title II clearly delineates the entities which are to be considered covered as places of public accommodation. Id. Of the fifteen specific examples, none of them remotely resemble an airlines. In fact, there is nothing even close to a conveyance of transportation, such as buses or trains, in the statute. Therefore, this court finds that, after reading the plain meaning of the statute, Congress did not intend to include aircraft within the meaning of a place of public accommodation.

Therefore, the plaintiff's Title II claim was dismissed.

Another case on point is the case of <u>Kalantar v. Lufthansa German Airlines</u>, 402 F. Supp.

2d 130 (D.D.C. 2005), where the plaintiff asserted that Title II applied to "transportation facilities

and places, such as airport terminals, airline ticket counters, and airliners." According to the District

Court, "[t]he crux of Kalantar's Title II claim is that he was improperly denied air travel to Frankfurt

on the same terms as the other ticketed passengers, not that he was improperly denied admission to

the airport itself or to the Lufthansa ticket counter line. The relevant question, then, is whether Title

II's coverage extends to airplanes."

However, in analyzing Title II, the District Court found that, "[a]lthough Title II 'is to be

liberally construed and broadly read,' (<u>Miller v. Amusement Enters.,</u> 394 F.2d 342, 349 (5th

Cir.1968)), the statute 'clearly delineates the entities which are to be considered covered as places

of public accommodation.' <u>Huggar v. Northwest Airlines, Inc.,</u> 1999 WL 59841 at 3 (N.D.Ill. Jan.27,

1999). Among the four categories of places of public accommodation provided by Title II—places of lodging, places of eating, places of entertainment, and establishments located within or surrounding these other three types of premises—none even remotely resembles an airline, or indeed any other vehicle or mode of transportation. *See,* Id. (finding that "Title II ... does not govern aircraft.") Kalantar v. Lufthansa German Airlines, 402 F. Supp. 2d 130, 139 (D.D.C. 2005). Accordingly, the plaintiff's Title II action in Kalantar was dismissed. Accordingly, the plaintiff has misapplied Title II to the instant case and, as a result, her complaint should be dismissed.

This case is also akin to Purisima v. Tiffany Entm't, No. 09 CV 3502 NGG LB, 2014 WL 3828291, at 1 (E.D.N.Y. June 20, 2014), report and recommendation adopted, No. 09 CV 3502 NGG LB, 2014 WL 3828376 (E.D.N.Y. Aug. 4, 2014), wherein the plaintiff brought suit against a bus company after he allegedly was "forced" to sit in the back of the bus due to alleged discriminatory practices. He brought a cause of action pursuant to Title II. However, the Eastern District of New York noted that, "[b]ecause the statutory text of Title II 'clearly delineates the entities which are to be considered covered as places of public accommodation,' Huggar v. Northwest Airlines. Inc., No. 98 C 594, 1999 WL 59841, at 3 (N.D.Ill. Jan.27, 1999), some courts have concluded that modes of public transportation are not covered by this statute's protections." Id., at 4.

However, the Eastern District also went further to note that Court of Appeals analysis of §2000a claims when it stated the following:

> The Court of Appeals has indicated that § 2000a claims may be analyzed using the framework established for claims under 42 U.S.C. § 1981.....Under this framework, plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. Williams v. R.H. Donnelly Corp., 368 F.3d 123, 126 (2d Cir.2004). While plaintiff's burden is *de minimus,* "in order to defeat summary judgment, ...

[plaintiff must] proffer[ ] admissible evidence show[ing] circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive." McLee v. Chrysler Corp.,109 F.2d 130, 135 (2d Cir.1997): *see also,* Williams. 368 F.3d at 126 ("Plaintiff's claims nevertheless fail if she cannot make out a *prima facie* case of discrimination.").

Using this analysis, the plaintiff cannot establish a § 1981 claim either, as she cannot establish a case of discrimination. To establish a § 1981 claim, with no direct evidence of discrimination, she must rely on indirect proof. "An indirect approach requires a three-part inquiry: (1) the plaintiff must establish a prima facie case of discrimination by a preponderance of the evidence, (2) the burden then shifts to the defendant to come forward with evidence of a legitimate, nondiscriminatory reason for its action, and (3) the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Further, the plaintiff must establish that she is a member of a protected class; that her actions were satisfactory; that she suffered a materially adverse action; and that similarly situated non-protected individuals were treated more favorably. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In the case at bar, the plaintiff's actions cannot be deemed to be "satisfactory" as she was someone who had been involved in a verbal altercation and had been using profanity. She also was clearly deemed a safety concern and, therefore, fails to fit within the requisite categories required for a viable claim under § 1981.

While the plaintiff may well have encountered less than friendly or even rude service during her air travel, and while the plaintiff may have been disappointed in the quality of the service she received, the plaintiff has failed to demonstrate that she suffered a violation of her rights under the law. Moreover, the behavior alleged by the plaintiff does not rise to the level necessary

to sustain a claim for discrimination. Finally, even assuming that the behavior alleged amounted to something more than simple rudeness, the plaintiff has not offered any evidence sufficient to raise an inference of discrimination regarding the behavior. There is no evidence that the behavior of the flights attendants was not the result of learning of the prior altercation that the plaintiff had with the other passenger.

Accordingly, there is no evidence that racial slurs, racial profiling, or any racially discriminating behavior was directed at the plaintiff. The plaintiff was not removed from the aircraft, chastised, etc. She was merely told to refrain from her prior behavior, a behavior to which she has admitted (cursing). The plaintiff has not alleged any different treatment then any other passenger, as it is clear that the other passenger was not cursing.

Accordingly, there is no evidence that the plaintiff was "similarly situated" as to the other passengers who were treated differently than she. This is due to the fact that the plaintiff was the only passenger who was cursing and, as a result, was the only passenger who was told to "stop cursing." As a result there can be no finding of discrimination as, simply, the plaintiff was advised about behavior that only she was, admittedly exhibiting.

**POINT II**

**The Plaintiff's Cause of Action
Is Preempted By The Federal Aviation Act of 1958**

The plaintiff's claims are pre-empted by the Federal Aviation Act of 1958 as the plaintiff was deemed a clear safety concern on board the aircraft. Congress enacted the Federal Aviation Act in 1958 which entrusted the Administrator of the Federal Aviation Administration with the promotion of safe flight of civil air craft in air commerce by prescribing "regulations and minimum standards for other practices, methods, and procedure the Administrator finds necessary for safety

in air commerce." 49 U.S.C. § 44701(a)(5).

Specifically, Congress has enacted the Federal Aviation Act as "the United States Government has exclusive sovereignty of airspace of the United States." 49 U.S.C. § 40103(a)(1). "The Federal Aviation Act was enacted to create a uniform and exclusive system of federal regulation in the field of air safety." Air Transport Association of America Inc. v. Cuomo, 520 F.3d 218, 224 (C.A.2, 2008). "Shortly after it became law, we noted that the Federal Aviation Act was passed by Congress for the purpose of centralizing in a single authority-indeed, in one administrator-the power to frame rules for the safe and efficient use of the nation's airspace." Id. at 224. "The Federal Aviation Act requires that exclusive control of airspace management be concentrated at the national level." Id. at 224. "The intent to centralize air safety authority and the comprehensiveness of these regulations pursuant to that authority have led several other circuits (and several courts within this Circuit) to conclude that Congress intended to occupy the entire field and thereby preempt state regulation of air safety." Id. at 225. "The safety with which Congress was primarily concerned is the operational and functional integrity of an aircraft-internally and externally-as it affects passengers and the public." Stone ex rel. Estate of Stone v. Frontier Airlines, 256 F. Supp.2d 28, 42 (D.Mass., 2002). "The Federal Aviation Act preempts the entire field of aviation safety through implied preemption." Greene v. B.F. Goodrich Avionics Sys., Inc., 409 F. 3d 784, 795 (6th Cir. 2005). "The Federal Aviation Act and regulations promulgated pursuant to it establish complete and thorough safety standards for air travel, which are not subject to supplementation by .... state laws." Id. at 795.

One such regulation under the Federal Aviation Act is 49 U.S.C. 44902(b), which states:
**Permissive refusal**--Subject to regulations of the Under Secretary, an air carrier, intrastate air carrier, or foreign air carrier may refuse to transport a passenger or

property the carrier decides is, or might be, inimical to safety.

Under this regulation, "a refusal to transport cannot give rise to a claim for damages under either federal or New York State law unless that carrier's decision was arbitrary and capricious." Ruta v. Delta Airlines, Inc., 322 F. Supp. 2d 391, 397 (S.D.N.Y., 2004). "An airline's discretion to reject a passenger must be accepted if exercised in good faith and for a rational reason." Adamsons v. American Airlines, 58 N.Y. 2d 42, 49 (1982). "This deference to the airline's judgment is understandable in light of the fact that the airline must often make such decisions on the spur of the moment, shortly before the plane takes off, and therefore without the benefit of complete and accurate information. Id. In fact, "there are times when legitimate safety reasons require that the decision be based entirely on a passenger's prospective appearance and behavior." Id.

The law is clear that "a Captain of an airplane is entitled without further inquiry to rely upon a flight attendant's representations that a passenger might distract the flight attendant from performing his or her safety related duties." Ruta at 397. "Furthermore, even if the flight attendant makes exaggerated or false representations to the Captain, the Captain is under no obligation to leave the cockpit to investigate the truthfulness of those representations." Ruta at 398. The sincerity of the flight attendant's representations has no bearing on whether the Captain's decision was arbitrary and capricious. Id.

The New York Court of Appeals continues to hold that "the standard which should be applied in reviewing the discretion to deny boarding to a passenger is whether the decision was arbitrary, capricious or irrational, constituting an abuse of the discretion vested by law in the air

carrier. <u>Adamsons v. American Airlines</u>, 58 N.Y. 2d 42, 49 (1982). "We do not believe that Congress, in enacting the Federal Aviation Act, intended to test the airline's discretion to deny passage to certain persons by standards of negligence." *Id.* "Airline safety is too important to permit a safety judgment made by the carrier to be second-guessed months later in the calm of the courtroom by a judge or a jury, having no responsibility for the physical safety of anyone, on the basis of words which are inadequate to convey the degree of excitement and tenseness existing at the time the judgment was made." <u>Id.</u> at 48. In <u>Adamsons</u>, the decision to deny boarding to the plaintiff who was in need of surgery and was then delayed by two days causing her permanent paralysis was not an abuse of discretion, nor was the decision arbitrary or capricious as the decision was premised upon a valid concern of safety for the flight.

In the case at bar, the American Airlines flight attendant believed that plaintiff had just had a verbal altercation with another passenger where something inappropriate had been said. The plaintiff has admitted to using the "f-word" while also admitting that the other passenger was not using any profanity. The verbal altercation between the two passengers was reported to the Captain, who then decided to advise the plaintiff who had admittedly used profanity that if she did not stop cursing, she would be removed from the flight for the safety and well-being of others aboard. Absent a showing of arbitrariness, the plaintiff's argument that American Airlines failed to obtain information necessary to make its decision is improper. <u>Adamsons</u> at 49. It is of no consequence whether the other passenger was addressed. It is important to note that the plaintiff does not deny that she was cursing. Accordingly, this is not a situation where the flight attendants fabricated

something to the captain, etc. in an arbitrary, capricious or racist manner.

The Captain relied on the flight attendants' representations which, in fact, relayed the truth, namely, that the plaintiff had used profanity against another passenger in a verbal altercation prior to takeoff. This fact justified the decision to advise the plaintiff that, if she continued cursing to another passenger, she would be removed from the flight. It should be noted that plaintiff was moved to another seat and was permitted to remain aboard the aircraft, which further evidences the fact that the decision to talk to the plaintiff was based solely on her prior behavior, as opposed to any alleged discrimination.

As a matter of law, the plaintiff's allegations lack merit as the actions of the Captain were not arbitrary or capricious. As cited above, the Captain is under no obligation to leave the cockpit to investigate the truthfulness of the representations of the flight attendant. Ruta at 398. In the case here, the flight attendants were "telling the truth" as the plaintiff had been cursing, even if it were uttered only once. The plaintiff was deemed a safety concern as she had been involved with a verbal altercation with another passenger prior to take-off. However, she was merely advised that she could not continue her unsafe behavior (behavior to which she has admitted) or else she would be removed from the aircraft.

## POINT III

### The Plaintiff's Cause of Action For Improper Service Is Preempted By The Airline Deregulation Act of 1978

The plaintiff's cause of action is also preempted by the Airline Deregulation Act of 1978.

The plaintiff's complaint charges American Airlines with alleged improper "service." This can be observed because the plaintiff is discussing claims dealing with seating arrangements and the flight attendants dealings with herself and another passenger. These acts on behalf of the American Airlines flight attendants must be deemed a "service" and, therefore, her complaint should be dismissed under the theory of Preemption.

In this case, Preemption is provided for by the Supremacy Clause of the United States Constitution. The Supremacy Clause provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the Supreme Law of the Land; and the Judges in every state shall be bound thereby, any thing the Constitution or Laws of any state to the contrary notwithstanding. (U.S. Const., Art VI, cl 2).

"Preemption may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." Morales v. Trans World Airlines, Inc., 504 U.S. 374 (1992).

In 1978, Congress enacted the Airline Deregulation Act (ADA), which largely deregulated domestic air transport. "Maximum reliance on competitive market forces, rather than economic regulation, would best further efficiency, innovation, and low prices, as well as variety and quality...of air transportation." Farash v. Continental Airlines Inc., 2008 WL 2276660 (S.D.N.Y.2008). "To ensure that the states would not undo federal deregulation with regulations of their own," Congress included a federal preemption provision, Section 105, which is now codified at 49 U.S.C. §41713(b)(1). The provision reads, in pertinent part:

14

> "Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route or service of an air carrier that may provide air transportation under this subpart" 49 U.S.C. §41713(b)(1)

It is respectfully submitted that the actions of the two flight attendants fall under the term and definition of "service of an air carrier" and, therefore, the plaintiff's causes of action, under any theory of liability, are preempted by the Airline Deregulation Act of 1978.

To assess whether a tort claim should be preempted, courts in the Districts of New York have generally applied the three-part test articulated in Rombom v. United Air Lines, Inc., 867 F.Supp. 214 (S.D.N.Y.1994) and reiterated in Ruta v. Delta Airlines, Inc., 324 F.Supp.2d 524 (S.D.N.Y.2004). Under Rombom, the Court must first determine whether the activity at issue in the claim is an airline service. See Rombom at 867 F.Supp. at 221- 22. In the case at bar, the flight attendants were discussing the seating arrangement of the plaintiff and whether she could remain on board the aircraft.

Turning again to Rombom, if the action is considered a service, then the Court must decide whether the claim affects the airline service directly or tenuously, remotely or peripherally. *Id.* Here, the plaintiff is making a direct claim of negligence in how they performed seating arrangements and how they "threatened her" with the possibility of being removed from the aircraft. These claims are direct allegations against the duties of a flight attendant. Finally, the Court must decide whether the underlying tortious conduct was reasonably necessary to the provision of the service. *Id.* In the instant matter, the flight attendants were reacting to altercation between two passengers, whose seats

were changed and then the possibly removal of the plaintiff from the aircraft. These claims are reasonable and were necessarily part of their duties as flight attendants. *See also*, Galbut v. American Airlines , 27 F. Supp.2d 146 (E.D.N.Y. 1997).

Accordingly, the plaintiff's claims resulting from the service or disservice of seating of the plaintiff, as well as the flight attendants' alleged failure to provide good customer service, should be preempted and dismissed as a matter of law. In Rombom, the Court found that "[b]ecause Rombom's allegations openly attack[ed] the manner in which the flight crew provided a service, her claims directly implicate a service."

This case is directly on point to Farash v. Cont'l Airlines, Inc., 574 F. Supp. 2d 356, (S.D.N.Y. 2008) aff'd, 337 F. App'x 7 (2d Cir. 2009). In Farash, the plaintiff brought suit against defendant Continental Airlines, Inc. for damages allegedly incurred when he was asked to move from one first-class passenger seat to another first-class passenger seat to accommodate a father traveling with his pre-teen son on a flight from Miami, Florida, to Newark, New Jersey. There were various "rude and hostile" confrontations between the plaintiff and the flight attendant.

In analyzing the case, the New York District Court, noted that "[p]laintiff first alleges that the flight attendant requested that he move to another first-class seat to accommodate a father and son traveling together, and that his new seat was next to a federal Air Marshal. These claims are all related to the flight attendant's efforts to locate appropriate seat assignments and resolve seat conflicts. Such claims are clearly airline services." Farash v. Cont'l Airlines, Inc., 574 F. Supp. 2d 356, 364 (S.D.N.Y. 2008) aff'd, 337 F. App'x 7 (2d Cir. 2009). Regardless of the "bad behavior"

of the flight attendant, the actions were still deemed a service. Thus, the plaintiff's state law claims were preempted and those claims were dismissed. The remaining claims were found to lack merit and the plaintiff's complaint was ultimately dismissed.

It is respectfully submitted that this Court should also find that the flight attendants' actions should be deemed a "service" given the holding of this Court in <u>Khan v. American Airlines</u>, 2008 WL 5110852 (S.D.N.Y 2008). In <u>Khan</u>, the plaintiff, a mother, individually and on behalf of her son, brought suit for intentional infliction of emotional distress after her son, who has a nut allergy, was a passenger on board the defendant's aircraft which provided peanuts to its passengers. The plaintiffs maintained that, prior to boarding, they were guaranteed a "peanut free flight." They also alleged that they were treated in a rude manner by the flight attendants while on board the defendant's aircraft.

The District Court analyzed the case when the defendant moved for dismissal under a theory of preemption under the ADA, claiming that the service of peanuts was a "service" of the airline and its flight attendants. District Judge Naomi Reice Buchwald compared the case before her to the case of <u>Air Transport Ass'n of America, Inc. v. Cuomo</u>, 520 F.3d 218 (2nd Cir. 2008), wherein the Second Circuit had concluded that "requiring airlines to provide food, water, electricity, and restrooms to passenger during lengthy ground delays related to the service of an air carrier and therefore falls within the express terms of the ADA's preemption provision." <u>Id</u>., at 222-223. Accordingly, the District Court noted that the Second Circuit was rejecting a strict and narrow interpretation of "service" in rendering the <u>Cuomo</u> decision. Accordingly, Judge Buchwald found that on board

amenities were found to be related to a "service."

In addition, any claim regarding the quality of the service on the flights and/or the conduct of the flight attendants, including the way in which they communicated with the plaintiff in questioning her behavior, relates to service and is preempted. This court continues to hold that "if a flight attendant asked a rambunctious passenger to be quiet, even in a rude way, that action would be reasonably necessary to the provision of a service." Farash v. Continental Airlines, 2008 WL 2276660 (S.D.N.Y.2008). Claims of "rude and unprofessional actions, such as treating passengers as children, were also preempted as the actions were reasonable and not outrageous." Rombom v. United Air Lines, Inc., 867 F.Supp. 214, 222 (S.D.N.Y.1994). "Rude communications and uncaring treatment between flight attendants and customers, when communications are designed to effect a service are preempted. Farash v. Continental Airlines, 2008 WL 2276660 (S.D.N.Y.2008) We note that in Khan, Judge Buchwald reiterated the Farash decision's proper findings regarding a flight attendant's interactions with a passenger while making seating assignments as a "service" that should be preempted. Khan v. American Airlines, 2008 WL 5110852, 4 (S.D.N.Y 2008).

This case is also akin to Galbut v. American Airlines, Inc., 27 F. Supp.2d 146, (E.D.N.Y. 1997), where an airline passenger's tort claims were brought against the airline, for slander *per se*, false arrest, false imprisonment, infliction of emotional distress, and negligence, arising out of airline's requirement that passenger pay for upgrades and airline's allegedly false allegations that passenger had stolen upgrade stickers. In Galbut, the Court applied the standard used in the oft-cited case of Rombom v. United Air Lines, Inc., 867 F.Supp. 214 (S.D.N.Y.1994) wherein the Court "set

forth a tripartite test for preemption. The Court must first determine whether the activity at issue in the claim is a service. If the activity is deemed to be a service, the court must then ascertain whether the claim affects the airline service directly or tenuously, remotely, or peripherally. Finally, the Court must determine whether the underlying tortious conduct was reasonably necessary to the provision of the service. Id. at 222."

Accordingly, in Galbut, the Court examined the case regarding ticketing, boarding procedures and the issues surrounding upgrades, and determined the following as it dismissed the plaintiff's tort claims based on preemption by the Airlines Deregulation Act of 1978:

> Application of the *Rombom* test clearly indicates that plaintiff's claims should be preempted. First, the activities at issue in plaintiff's claim, that is the agent's refusal to permit plaintiff to upgrade using the gold stickers and the demand for payment for the upgrade, are services.....Second, the claim affects airline service directly, rather than tenuously, in that it relates specifically to defendant's upgrade policies and the manner in which defendant's employees carry out those policies when they believe that a passenger is not properly ticketed.....And finally, assuming plaintiff's version of facts to be true, I find that the underlying, allegedly tortious conduct furthered the provision of service in a reasonable manner. Specifically, plaintiff's allegations amount to the following: that defendant did not provide an upgrade to first class with the stickers owned by plaintiff, that defendant wrongfully accused plaintiff of stealing the stickers, that defendant required payment for the upgrade to first class, that defendant entered remarks into plaintiff's PNR indicating a problem with his ticketing, that defendant mistakenly permitted plaintiff to purchase upgrade stickers at the Admiral's Club.......Galbut v. American Airlines, Inc., 27 F. Supp.2d 146, 152 (E.D.N.Y. 1997).

In the case at bar, every aspect of the plaintiffs' case regarding the treatment surrounding the verbal altercation with the other passenger, her reseating and her possible removal from the aircraft

is preempted by the Airline Deregulation Act, as it clearly falls within the definition of a "service." Thus, any claim regarding the flight attendants' actions are preempted and the plaintiff cannot establish any cause of action under a theory based on the "rude behavior" and/or inability to provide better service on an American Airlines. Therefore, the complaint against American Airlines should be dismissed. *(See also,* <u>Weiss v. El A. Israel Airlines, Ltd.</u>, 471 F.Supp.2d 356 (S.D.N.Y. 2006); <u>Nazarian v. Compagnie Nationale Air France</u>, 989 F.Supp. 504 (S.D.N.Y. 1998))

## POINT IV

### The Plaintiff Has Suffered No Damages In This Case and, <u>Therefore, Her Complaint Must Be Dismissed</u>

In New York, in order to prevail in a negligence action, the plaintiff must establish that the defendant owed a duty of care, breached that duty, and the breach proximately caused the injury to the plaintiff. <u>Solomon v. The City of New York</u>, 66 N.Y.2d 1026, 499 N.Y.S.2d 392 (1985), <u>Kush v. City of Buffalo</u>, 59 N.Y.2d 26, 462 N.Y.S.2d 831 (1983);<u>Akins v. Glens Falls City School District</u>, 53 N.Y.2d 325, 441 N.Y.S.2d 644 (1981); <u>Prosser & Keeton On Torts</u>, Section 30, at 164 (5th Ed. 1984). In all of these Court of Appeals cases, it has been found that the failure to establish any single element of negligence warrants dismissal of the action. In the instant action, the plaintiff has not alleged one injury either, physical, mental or monetary, and accordingly, she cannot establish that American Airlines caused her any damages. Accordingly, American Airlines is entitled to dismissal as a matter of law.

This case is akin to <u>Fondo v. Delta Airlines, Inc.</u>, 2001 WL 604039(S.D.N.Y. 2001) where the plaintiff purchased travel aboard Delta and AirFrance airlines. Delta Airlines flew him

to the destination in Africa as per the purchased tickets, however, the plaintiff claimed he was given "assurances" that there would be a connecting flight to a further destination. Eventually, the plaintiff brought suit for breach of contract and various other claims sounding in tort theories when, for various reasons, he was unable to reach his destination in time for a set engagement. The District Court dismissed the breach of contract claim (as well as the tort claims), by examining the facts of the case and finding that "[the p]laintiff cannot dispute that Delta complied with the terms of the ticket as it was printed and accepted by him. The ticket provided for a round trip to Douala, Cameroon, and that is exactly where Plaintiff was flown." Fondo v. Delta Airlines, Inc., 2001 WL 604039, 3 (S.D.N.Y. 2001).

While Fondo sounded in a breach of contract case, the theories are the same. The plaintiff has suffered no damages in this case. She was transported to her destination. If reading the complaint liberally, she has not alleged emotional injuries or that the "threats" frightened her to the point of damaging her. Further, the only relief sought is the costs in bringing the lawsuit. Simply put, if the plaintiff did not bring the lawsuit, she would, hypothetically, have been whole and undamaged. It should also be noted that the plaintiff has been granted to proceed in forma pauperis. Accordingly, she is not incurring damages associated with the prosecution of this suit.

It is respectfully submitted that, it appears that the plaintiff may be disappointed with the decision of the New York State Division of Human Rights and is now seeking a different forum to "complain" about American Airlines. This should not be permitted as the Court system is not a venue to complain about "hurt feelings." Therefore, the plaintiff's complaint should be dismissed

in its entirety with prejudice.

## CONCLUSION

As illustrated above, the plaintiff's claims under Title II do not apply to an aircraft and claims (potentially) under § 1981 cannot be sustained. In addition, <u>any</u> other cause of action claimed in this case would be preempted by the Federal Aviation Act in 1958 and the Airline Deregulation Act of 1978. For the foregoing reasons, it is respectfully requested that this Honorable Court issue an Order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing the plaintiff's Complaint in its entirety, together with costs and disbursements, and for such other and further relief as this Court may deem just and proper.

Dated: New York, New York
      March 10, 2016

                         Respectfully submitted,

                         **RUTHERFORD & CHRISTIE, LLP**

By: _____
                         David S. Rutherford (DR 8564)
                         L. Diana Mulderig (LM 9835)
                         Attorneys for Defendant,
                         AMERICAN AIRLINES, INC.
                         800 Third Avenue, 9th Floor
                         New York, New York 10022
                         (212) 599-5799

To:    Alecia James
       2358 Atlantic Avenue, Apt. 2B
       Brooklyn, New York 11233