UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ALECIA JAMES,

       Plaintiff,

   -against-          **MEMORANDUM & ORDER**

                 16-CV-674 (PKC) (PK)

AMERICAN AIRLINES, INC.,

       Defendant.
----------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

  *Pro se* Plaintiff Alecia James filed this action seeking nominal damages and injunctive relief based on alleged racial discrimination against her by Defendant American Airlines, Inc. ("American") while she was a passenger on an airplane operated by American. James, a black woman, alleges that she was the subject of racial discrimination when, in response to an altercation between James and another passenger on the flight, an American flight attendant admonished James and threatened to remove her from the plane if she continued cursing. James asserts claims against American under 42 U.S.C. § 1981 ("Section 1981"), 42 U.S.C. § 2000a, 42 U.S.C. § 2000d, 49 U.S.C. § 40127(a), and N.Y.S. Executive Law, Article 15 (Human Rights) ("NYHRL").

  Before the Court is American's motion to dismiss this action in its entirety. For the reasons set forth below, the Court grants American's motion as to all of James's claims except her Section 1981 and NYHRL clams.

I. Background

   A. Facts[1]

On August 17, 2015, Plaintiff Alecia James, a black woman, took an American Airlines flight from Las Vegas to New York. (Dkt. 15-1 at 3; Dkt. 24 ¶ 4.) A few minutes after James boarded the plane, a white woman sitting in the seat behind James began violently banging and pounding the back of James's seat. (Dkt. 24 ¶ 4.) James asked the woman to stop, but the woman continued to bang and pound on the back of James's seat. (*Id.* ¶¶ 4-5.) James pleaded with the passenger to stop, but she did not, which "led to words being exchanged." (*Id.* ¶ 5.)

No flight attendants were present to observe this interaction between James and the other passenger. (*Id.* ¶ 6.) A few minutes later, as a flight attendant was passing James's seat, James told the flight attendant that she (James) was being "antagonized and attacked" by the passenger behind her. (*Id.* ¶ 7.) James requested a new seat, and the flight attendant complied, reassigning James to a new seat in a different aisle. (*Id.*)

---

[1] The facts stated in this section are taken from the amended complaint (Dkt. 15-1) and Plaintiff's Affirmation in Opposition to Defendant's Motion to Dismiss (Dkt. 24), the latter of which, in light of James's *pro se* status, the Court considers as a supplemental pleading.

American asks the Court to consider factual assertions made in a Determination and Order After Investigation ("Determination") issued by the New York State Division of Human Rights ("NYSDHR") in connection with a complaint of discrimination that James filed with the NYSDHR prior to filing this lawsuit. (Def.'s Br. 2 n.1.) American appears to argue that the NYSDHR Determination can be considered on a motion to dismiss because it is "integral" to James's complaint. (*Id.*) But, although courts in this Circuit "treat plaintiff's *allegations* to administrative bodies in discrimination claims as integral parts of the pleadings," *James v. Enter. Ass'n of Steamfitters*, 06 Civ. 680, 2007 WL 5065001, at *4 (E.D.N.Y. Oct. 30, 2007) (emphasis added), there is no authority for treating the administrative body's *findings* as an integral part of the pleadings, as American asks the Court to do here. American's argument appears to be an improper attempt to mount a factual challenge to the complaint through the NYSDHR Determination, which itself is based on factual statements that American made to the NYSDHR. (*See* Dkt. 25-3.) American cannot smuggle its own version of events into a 12(b)(6) motion in this manner.

2

After James had been seated in her new seat for about ten minutes, two flight attendants came over. (*Id.* ¶ 8.) In a voice loud enough for other passengers to hear, one of the flight attendants told James that she would be removed from the flight "if [she] continued cursing." (*Id.*) The flight attendant told James that this message was coming from the pilot of the plane. (*Id.*) Neither the pilot, nor any flight attendant or any other American employee, admonished in any way the white woman who had banged and pounded on James's seat. (*Id.* ¶ 10.)

James was perplexed by how American had treated her. (*Id.* ¶ 9.) She did not understand why she had been singled out for public humiliation and a threat of removal from the plane, when James had not cursed at anyone around her in the new seat. (*Id.*) Other passengers also expressed their surprise and confusion about how American had singled James out. (*Id.*) Bereft of any other explanation, James concluded that American had publicly admonished her and threatened to remove her from the plane because she was black. (*Id.* ¶ 11.)

James alleges that she suffered "severe emotional distress" as a result of this event. (Dkt. 15-1 at 4.) Further, James alleges that "[g]iven [American's] known history of prejudice towards me, it's likely that I'll be discriminated again if I travel aboard their carriers." (*Id.*)

**B. Procedural History**

Four days after the incident, on August 21, 2015, James filed a verified complaint with the NYSDHR charging American with an unlawful discriminatory practice relating to public accommodation because of race or color in violation of New York Executive Law, Article 15 (Human Rights Law). After an investigation by the NYSDHR, which included written submissions to the NYSDHR and at least one conference, the NYSDHR issued its Determination, dated December 30, 2015, in which the Division held that "there is no probable cause to believe that [American] has engaged in or is engaging in the unlawful discriminatory practice complained of,"

and dismissed the complaint on that basis. (Dkt. 20-2.)[2] The Determination notified the parties that "any party to this proceeding may appeal this Determination to the New York State Supreme Court in the County wherein the alleged unlawful discriminatory practice took place." (Dkt. 20-2.)

On February 5, 2016, plaintiff commenced this action. (Dkt. 1.) The original complaint asserted a claim under 42 U.S.C. § 2000a based on the circumstances described above. (Dkt. 1-1 at 2.) Following a motion to dismiss by American, James filed an amended complaint (Dkt. 15-1), which is now the operative complaint in this action. In her amended complaint, James asserts claims of race discrimination under 42 U.S.C. § 1981 (Section 1981), 42 U.S.C. § 2000a ("Title II"), 42 U.S.C. § 2000d ("Title VI"), 49 U.S.C. § 40127(a), and N.Y.S. Executive Law, Article 15 (Human Rights Law) (NYSHRL). James does not allege any damages, but instead requests "[d]eclaratory and injunctive relief as the court sees fit," "sanction[s] for [American's] discriminatory practices," and indemnification for her filing and litigation costs. (Dkt. 15-1 at 5.) American moves under Fed. R Civ. P. 12(b)(6) to dismiss the amended complaint in its entirety for failure to state a claim.

## II. Legal Standard

To withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The liberal notice pleading standard of Fed. R. Civ. P. 8(a) only requires that a

---

[2] The Court takes judicial notice of the Determination for the limited purpose of establishing the procedural history of James's litigation against American. *See, e.g.*, *Humphries v. City Univ. of N.Y.*, 13 Civ. 2641, 2013 WL 6196561, at *3 n.5 (S.D.N.Y. Nov. 26, 2013) (observing that courts routinely take judicial notice of documents filed in other courts "to establish the fact of and background of that litigation," *but not* "for the truth of the matters asserted in that litigation" (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)). As noted above, *supra* n. 1, the Court declines to take judicial notice of the Determination's findings or any factual assertions made by American that are recited or relied upon in the Determination.

complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 555. The complaint need not set forth "detailed factual allegations," but the plaintiff must present "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* In evaluating a 12(b)(6) motion to dismiss, the district court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enter.,* 448 F.3d 518, 521 (2d Cir. 2006). Furthermore, and of particular relevance here, "the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest*." *Smith v. Levine*, 510 F. App'x 17, 20 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006)) (internal quotation marks omitted) (emphasis in original); *Triestman*, 470 F.3d at 474-75 (noting that this "well-established" "policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training'" (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983))).

### III. <u>Analysis</u>

#### A. *Res Judicata*

As a threshold matter, American contends that all of James's claims are barred by the doctrine of *res judicata*. (Def.'s Br. 22.) American argues that the NYSDHR's finding of "no probable cause" in James's administrative proceeding against American (Dkt. 20-2) precludes James from pursuing discrimination claims in this Court based on the same facts that served as the basis for her administrative proceeding. (Def.'s Br. 22.)

The standards for giving preclusive effect to an administrative determination are well established. The Supreme Court has held that, "when a state agency acting in a judicial capacity

resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986) (internal citations, alterations, and quotation marks omitted). In New York, preclusive effect is given to an administrative determination if (i) the determination is "quasi-judicial," (ii) "the issue sought to be precluded is identical to a material issue necessarily decided by the administrative agency in a prior proceeding," and (iii) "there was a full and fair opportunity to contest this issue in the administrative tribunal." *Jeffreys v. Griffin*, 801 N.E.2d 404, 407 (N.Y. 2003). The party asking for application of preclusion "must show identity of the issue, while the opponent must demonstrate the absence of a full and fair opportunity to litigate." *Id.*

There is little question that the NYSDHR is a quasi-judicial agency whose determinations may, in some circumstances, carry preclusive effect. *See, e.g.*, *Peguero-Miles v. City Univ. of N.Y.*, 13 Civ. 1636, 2015 WL 4092336, at *7 (S.D.N.Y. July 6, 2015) (citing *DeCintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 117-18 (2d Cir. 1987)). And James does not dispute that the fundamental issue disputed in her NYSDHR proceeding—*i.e.*, whether she was the subject of intentional race discrimination by American employees—is identical to her claims in this action. (Def.'s Br. 22; Pl.'s Br. 3-5.) The only question for purposes of preclusion, therefore, is whether James had a "full and fair opportunity" to litigate her discrimination claim before the NYSDHR.

When evaluating whether an unreviewed decision by the NYSDHR afforded a plaintiff a "full and fair opportunity" to litigate her claims, courts in New York consider "the various elements which make up the realities of litigation," including "the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the

applicable law and foreseeability of future litigation." *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 733-34 (2d Cir. 2001) (quoting *Schwartz v. Public Adm'r of Bronx Cnty.*, 246 N.E.2d 725, 730 (N.Y. 1969)).

In making this determination, the Court takes guidance from the Second Circuit's decisions in *DeCintio v. Westchester County Medical Center*, 821 F.2d 111 (2d Cir. 1987), and *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706 (2d Cir. 2001), two federal discrimination cases in which the Second Circuit applied New York law to determine the preclusive effect of an NYSDHR finding of "no probable cause." In *DeCintio*, the Second Circuit gave preclusive effect to an NYSDHR determination where (i) the plaintiff was represented by counsel in the NYSDHR proceeding, (ii) the plaintiff had received an evidentiary hearing before a civil service board pursuant to Section 75 of the New York Civil Service Law, and (iii) the plaintiff conceded in federal court that he had "fleshed out" the relevant issues in the NYSDHR proceeding. *Kosakow*, 274 F.3d at 729-30 (analyzing *DeCintio*). By contrast, in *Kosakow*, the Second Circuit declined to give preclusive effect to an NYSDHR determination where (i) the plaintiff had appeared *pro se* before the NYSDHR, (ii) the record did not demonstrate the extent of discovery taken before the NYSDHR, (iii) the record did not reflect any witness interviews being conducted in the proceedings before the NYSDHR, (iv) the plaintiff did not have access to important documentary evidence required to rebut the defendant's assertion of a non-discriminatory motive, (v) the plaintiff had no opportunity to confront witnesses against her, and (vi) the NYSDHR based its determination "primarily, if not exclusively, upon a review of the papers submitted." *Kosakow*, 274 F.3d at 734-36.

Construing the record in the light most favorable to James as a *pro se* plaintiff, the Court cannot conclude that James had a "full and fair opportunity" to litigate her discrimination claim before the NYSDHR. As in *Kosakow*, (i) James appeared *pro se* before the NYSDHR, (ii) the

7

record does not demonstrate the extent of discovery taken before the NYSDHR, (iii) the record does not reflect whether any witness interviews were conducted as part of the "investigation" underlying the determination by the NYSDHR, and (iv) the record does not demonstrate whether James had an opportunity to confront witnesses against her before the NYSDHR. These factors distinguish this case from *DeCintio* and bring it within the ambit of *Kosakow*. Accordingly, the Court declines to give preclusive effect to the NYSDHR's determination.

**B. Section 1981 Claim**

To establish a claim under 42 U.S.C. § 1981, a plaintiff "must allege facts supporting the following elements: (1) plaintiff[] [is a] member[] of a racial minority; (2) [defendant's] intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities." *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000). "Those enumerated activities include the rights 'to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property.'" *Id.* (quoting 42 U.S.C. § 1981(a)).

In challenging James's Section 1981 claim, American does not dispute that James is a member of a racial minority, but argues, first, that the amended complaint does not plausibly allege an intent to discriminate, and, second, that even if the complaint alleges an intent to discriminate, it does not plausibly allege discrimination concerning one of the statute's "enumerated activities." The Court disagrees.

*First*, the Court holds that James has plausibly alleged an intent to discriminate against her based on her race. James alleges that she notified an American flight attendant that another passenger, a white woman, was repeatedly and violently banging on the back of James's seat. James further alleges that no American flight attendant was present to personally observe the interaction

8

and verbal exchange between James and the white passenger. James further alleges that, notwithstanding her report to the flight attendant about the white passenger hitting James's seat, American chose to publicly admonish James and threaten to remove her from the plane, while not saying anything to the white passenger. James alleges that not only she, but other passengers, were surprised by American's one-sided handling of the situation. Viewing these allegations in the light most favorable to James, the Court holds that James has adequately alleged that American's decision to admonish and threaten to remove James was motivated by racial bias. *See, e.g.*, *Bary v. Delta Airlines, Inc.*, No. 02 Civ. 5202, 2009 WL 3260499, at \*9-10 (E.D.N.Y. Oct. 9, 2009) (denying motion for summary judgment as to Section 1981 claim alleging that airline allowed white passengers to carry bags onto aircraft but prohibited plaintiff, a black man, from doing so, based on indirect evidence giving rise to an inference of unlawful discrimination); *Trigueros v. Sw. Airlines*, No. 05 Civ. 2256, 2007 WL 2502151, at \*4 (S.D. Cal. Aug. 30, 2007) (similar).

In an effort to challenge James's allegations of racial bias, American contends that James has failed to identify any person who was "similarly situated" to James but received different treatment. According to American, the white woman who allegedly pounded on the back of James's seat was not "similarly situated" to James because she (the white woman) did not curse at James. (Def.'s Br. 5-8.) American further contends that James has "admitted" that she cursed at the white woman. (Def.'s Br. 6-7.) But a basic flaw in this argument is that it rests entirely on materials—namely, the NYSDHR Determination—that cannot be considered for the truth of their factual assertions at this stage of litigation. *See supra* n.1. Furthermore, American ignores the fact that the conduct James alleges the white passenger engaged in, namely, violently pounding on James's seat, was arguably more offensive and disruptive than cursing, and thus should have prompted the same, if not harsher, treatment by American than James received. At this stage, the

amended complaint controls, and the amended complaint adequately alleges that James and the white woman were situated similarly but treated differently.[3]

*Second*, the Court finds that American's threat to remove James from the airplane if she "continu[ed] to curse" affected an "enumerated activity" within the meaning of Section 1981. To be sure, there is caselaw suggesting that a Section 1981 claim cannot rest upon a mere threat that a plaintiff's contractual right will be impaired. *See, e.g.*, *Poles v. Brooklyn Cmty. Hous. & Servs.*, 10 Civ. 1733, 2010 WL 1992544, at *4 (E.D.N.Y. May 14, 2010) (holding that allegations of racially-motivated lawsuit threatening plaintiff's right to keep possession of his residence did not constitute discrimination concerning an "enumerated activity" under Section 1981, because the plaintiff ultimately retained possession of the residence). But American's threat to remove James from the plane went beyond merely threatening James's contractual right to remain onboard the flight and travel to her destination. Construed in the light most favorable to James, the threat constituted a unilateral change in the terms of James's contract with American, or, alternatively, evidenced a racially motivated change in American's approach to enforcing its contract with James. As alleged in the amended complaint, American communicated to James that her right to remain on the aircraft was subject to a new condition—namely, not cursing—whereas the white woman's contact with American was not so conditioned. In this way, James's contract with American to be flown in relative comfort, to include not being subjected to racially motivated hostility or threats by American employees, was also altered. The Court finds that this change in the contractual

---

[3] American also argues that the amended complaint cannot establish intentional discrimination because "no racial slurs or bias [have] been affirmatively demonstrated." (Def.'s Br. 6.) The law is clear, however, that direct evidence of racial bias (such as a racial slur) is not required to establish a *prima facie* case of discrimination. *See, e.g.*, *Bary*, 2009 WL 3260499, at *9-10. To the contrary, circumstantial evidence of intent—such as the disparate treatment alleged in this case—is often sufficient to establish a *prima facie* claim of discrimination, especially at the motion to dismiss stage.

relationship between James and American impaired James's "rights 'to make and enforce contracts,'" *Brown*, 221 F.3d at 339, which brings the threat within the protection of Section 1981.

Accordingly, American's motion to dismiss James's Section 1981 claim is denied.

**C. Title II Claim**

To plead a claim under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, a plaintiff must allege intentional discrimination depriving him or her of "the equal enjoyment of the goods, services, facilities, privileges, advantages, [or] accommodations of any place of public accommodation." 42 U.S.C. § 2000a(a). Title II defines a "place of public accommodation" by setting forth a list of "establishments" that constitute "places of public accommodation" within the meaning of the statute, including "any inn, hotel, motel, . . . restaurant, cafeteria, lunchroom, . . . motion picture house, theater, concert hall," and similar establishments. 42 U.S.C. § 2000a(b). Airplanes and other forms of transportation are not among the public accommodations listed in Title II. Furthermore, a private plaintiff cannot obtain money damages on a claim brought under Title II—the only remedy available is prospective relief for the plaintiff or those who are similarly situated. *See Newman v. Piggie Park Enter., Inc.*, 390 U.S. 400, 401 (1968). To show standing for prospective relief, a plaintiff must plead and prove a "real and immediate threat of repeated injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *accord H.B. v. Byram Hills Cent. Sch. Dist.*, 648 F. App'x 122, 125 (2d Cir. 2016) ("To obtain prospective relief, such as a declaratory judgment or an injunction, a plaintiff must show, *inter alia*, a sufficient likelihood that he or she will again be wronged in a similar way." (internal quotation marks and alterations omitted)).

James's claim under Title II fails for two independent reasons. First, James's Title II claim alleges that she was denied equal enjoyment of services while onboard an American airplane, but an aircraft is not a "place of public accommodation" within the meaning of the statute, 42 U.S.C.

§ 2000a(b). *See Kalantar v. Lufthansa German Airlines*, 402 F. Supp. 2d 130, 139 (D.D.C. 2005); *Abdallah v. JetBlue Airways Corp.*, 14 Civ. 1050, 2015 WL 3618326, at *6 (D.N.J. June 9, 2015). Indeed, as many courts have observed, "none of [the establishments listed in the statute] remotely resemble[s] an airline[]." *Huggar v. Nw. Airlines, Inc.*, 98 Civ. 594, 1999 WL 59841, at *3 (N.D. Ill. Jan. 27, 1999). James's claim under Title II must be dismissed on this ground alone.

Second, James fails to allege facts sufficient to sustain prospective relief under Title II. Even construed in the light most favorable to James, the complaint alleges that James was the victim of a single act of discrimination by one or two American employees onboard a specific aircraft under specific circumstances involving an altercation between herself and another passenger. James does not allege any facts suggesting that she plans to take another American flight in the near future, let alone that she is likely to take a flight staffed by the same pilot and crew whom she accuses of acting against her with discriminatory intent. James also does not allege any facts suggesting a policy, practice, or pattern of discrimination onboard American flights such that James could rest her claim to prospective relief on more general allegations of an intent to fly American in the future. Although James claims that "[g]iven [American's] known history of prejudice towards me, it's likely that I'll be discriminated again if I travel aboard their carriers[]," neither the amended complaint nor her response to the motion to dismiss provide any factual basis for this speculative and implausible claim. *See Twombly*, 550 U.S. at 570 (holding that complaint must plead facts sufficient "to state a claim to relief that is plausible on its face."). In sum, James does not adequately allege "a sufficient likelihood that [she] will again be wronged in a similar way" by American. *Byram Hills*, 648 F. App'x at 124-25. For this additional reason, the Court grants American's motion to dismiss James's claim under Title II, 42 U.S.C. § 2000a. *See Byram Hills*, 648 F. App'x at 125.

### D. Title VI Claim

To plead a claim under Title VI of the Civil Rights Act of 1964, a plaintiff must allege that he or she, "on the ground of race, color, or national origin, [was] excluded from participation in, [was] denied the benefits of, or [was] subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Here, James does not identify any "program or activity receiving Federal financial assistance" to sustain her claim under Title VI. (*See generally* Dkt. 15-1; Dkt. 24.) A claim under Title VI cannot proceed without that requisite nexus. *See McCrudden v. E-Trade Fin. Corp.*, 13 Civ. 8837, 2014 WL 3952903, at *4 (S.D.N.Y. Aug. 12, 2014) (dismissing Title VI claim where complaint failed to allege requisite nexus between federal assistance and alleged discrimination); *Rojas v. Port Auth. of N.Y.*, 15 Civ. 6185, 2016 WL 5921777, at *12 (E.D.N.Y. Oct. 11, 2016) (same), *appeal docketed*, No. 16-3808 (2d Cir. 2016).[4] For this reason, the Court grants American's motion to dismiss James's claim under Title VI.

### E. Claim under 49 U.S.C. § 40127(a)

James asserts a claim under 49 U.S.C. § 40127(a) ("Section 40127(a)"), which prohibits any "air carrier" from "subject[ing] a person in air transportation to discrimination on the basis of race, color, national origin, religion, sex, or ancestry." American argues that this claim should be dismissed because there is no private right of action under Section 40127(a). (Def.'s Br. 22.) The Second Circuit has not ruled on this issue, but the Court finds persuasive guidance from several district courts opinions that have done so, particularly *Mutlu v. Jetblue Airways Corp.*, 2009 U.S. Dist. LEXIS 60164

---

[4] Some courts addressing Title VI claims based on alleged discrimination on an airplane have considered, for purposes of the "financial assistance" element of this claim, whether the Air Transportation Safety and System Stabilization Act of 2001 brings all airplanes within the scope of Title VI. *See, e.g.*, *Shotz v. Am. Airlines, Inc.*, 420 F.3d 1332 (11th Cir. 2005); *Bary v. Delta Airlines, Inc.*, 02 Civ. 5202, 2009 WL 3260499, at *9-10 (E.D.N.Y. Oct. 9, 2009). These courts have generally held that the Act does not extend to alleged discrimination on an airplane because the government "compensates," but does not *subsidize*, airlines under the Act. *Ibid.*

(S.D.N.Y. Mar. 31, 2009), in which Judge Preska applied the Supreme Court's decision in *Cort v. Ash*, 422 U.S. 66 (1975), to determine that 42 U.S.C. § 40127(a) does not confer a private right of action. *Accord Dennis v. Delta Air Lines, Inc.*, 10 Civ. 973, 2011 WL 4543491, at *8 (E.D.N.Y. Aug. 18, 2011). The Court is persuaded by the reasoning of these cases and holds, in kind, that there is no private right of action under 49 U.S.C. § 40127(a); rather the statute only grants the government authority to pursue violations of this provision. *See* 49 U.S.C. §§ 46106, 46107. Accordingly, the Court grants American's motion to dismiss James's claim under 49 U.S.C. § 40127(a).

### F. State Law Claim

In addition to her federal claims, James asserts a claim of intentional discrimination under New York State Executive Law, Article 15 (Human Rights Law). The pleading requirements for a discrimination claim under the NYHRL are materially the same as those that apply to James's claim under 42 U.S.C. § 1981. *See Holt v. Dynaserv Indus., Inc.*, 14 Civ. 8299, 2016 WL 5108205, at *4-5 (S.D.N.Y. Sept. 19, 2016); *Offor v. Mercy Med. Ctr.*, 167 F. Supp. 3d 414, 429-30 (E.D.N.Y. 2016), *vacated in part on other grounds*, --- F. App'x ---, 2017 WL 253616 (2d Cir. 2017). Accordingly, for the reasons stated above in the Court's analysis of James's Section 1981 claim, the Court holds that James has adequately pleaded a *prima facie* claim of race discrimination under the NYHRL.

In addition to the arguments advanced by American in connection with James's Section 1981 claim, American offers an alternative ground for dismissal of James's NYHRL claim. American argues that, regardless of the merits of James's claim under state law, her NYHRL claim is preempted by two federal statutes that regulate the airline industry: (1) the Airline Deregulation Act of 1978; and (2) the Federal Aviation Act of 1958. (Def.'s Br. 11-21.) The Court declines to address American's preemption arguments at this time. The Court has already

held that James's Section 1981 claim survives American's motion to dismiss, which means that, regardless of the Court's ruling on American's preemption arguments, James's assertion of discrimination, which underlies her claims under both Section 1981 and the NYHRL, will proceed to discovery. Thus, as a prudential matter, "it makes little sense to grant a motion to dismiss as to one of [these claims]." *Friedman v. N.Y. City Admin.*, 04 Civ. 3077, 2005 WL 2436219, at *9 (E.D.N.Y. Sept. 30, 2005). American is free to re-assert its preemption arguments at a later stage of the proceedings.

## IV. Conclusion

For the foregoing reasons, the Court grants in part and denies in part American's motion to dismiss. Plaintiff's claims under 42 U.S.C. § 2000a, 42 U.S.C. § 2000d, and 49 U.S.C. § 40127(a) are dismissed. Plaintiff's claims under 42 U.S.C. § 1981 and N.Y.S. Executive Law, Article 15 (Human Rights) shall proceed.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 31, 2017
Brooklyn, New York