UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ALECIA JAMES,                                    Docket No.:
                                                 16-CV-674 (PKC)(PK)

                         Plaintiff,

            -against-


AMERICAN AIRLINES, INC.


                         Defendant.
-------------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT**
**OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

*Of Counsel:*
     *David S. Rutherford, Esq.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT..................................................................................1

STATEMENT OF FACTS.....................................................................................3

STANDARD OF REVIEW....................................................................................5

ARGUMENT..........................................................................................................6

> **POINT I**
> **THE PLAINTIFF'S REMAINING CLAIMS UNDER N.Y.S. EXECUTIVE LAW, ARTICLE 15 (NYSHRL) AND 42 U.S. CODE § 1981 ARE PREEMPTED AND, AS A RESULT, MUST BE DISMISSED**...................................6
>
> **POINT II**
> **THE PLAINTIFF'S REMAINING CLAIMS UNDER 42 U.S. CODE § 1981 AND N.Y.S. EXECUTIVE LAW, ARTICLE 15 (NYSHRL) ARE PREEMPTED BY THE FEDERAL AVIATION ACT OF 1958**.........................7
>
> **POINT III**
> **THE PLAINTIFF'S REMAINING CLAIM UNDER N.Y.S. EXECUTIVE LAW, ARTICLE 15 (NYSHRL) IS PREEMPTED BY THE AIRLINE DEREGULATION ACT OF 1978**.................................12
>
> **POINT IV**
> **IF THIS HONORABLE COURT DEEMS THAT THE PLAINTIFF'S CLAIMS ARE NOT PREEMPTED, THE PLAINTIFF STILL CANNOT SUSTAIN A CLAIM UNDER 42 U.S. CODE § 1981**...................14
>
> **POINT V**
> **THE PLAINTIFF CANNOT SUSTAIN A CLAIM UNDER 42 U.S. CODE § 1981 BECAUSE THE FLIGHT ATTENDANT WHO ALLEGEDLY COMMITTED THE DISCRIMINATORY ACTS DID NOT HOLD A SUPERVISORY POSITION**...................21

i

<u>POINT VI</u>
**THE PLAINTIFF'S CLAIM UNDER N.Y.S. EXECUTIVE LAW, ARTICLE
15 (NYSHRL) ALSO FAIL BECAUSE THE STANDARDS GOVERNING
42 U.S. CODE § 1981 AND N.Y.S. EXECUTIVE LAW, ARTICLE 15
(NYSHRL) ARE THE SAME AND SHE CANNOT SUSTAIN
EITHER CLAIM AS RESULT**...................................................................................23

<u>POINT VII</u>
**THE PLAINTIFF'S CLAIM UNDER N.Y.S. EXECUTIVE LAW, ARTICLE
15 (NYSHRL) SHOULD BE DISMISSED BASED ON *RES JUDICATA***.................24

**CONCLUSION**...................................................................................................................25

# TABLE OF AUTHORITIES

**Cases:**

Aboeid v. Saudi Arabian Airlines Corp.,
  959 F.Supp.2d 300 (E.D.N.Y. 2013)...........................................................................23

Adamsons v. American Airlines, Inc.,
  58 N.Y. 2d 42 (1982)................................................................................8, 9, 10

Air Transport Association of America Inc. v. Cuomo,
  520 F.3d 218 (C.A.2, 2008)........................................................................7

Brown v. City of Syracuse,
  673 F.3d 141 (2d Cir. 2012)......................................................................23

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986)...............................................................................5, 6

Christel v. AMR Corp.,
  222 F.Supp.2d 335 (E.D.N.Y. 2002)............................................................11

DeCintio v. Westchester County Medical Center,
  821 F.2d 111 (2nd Cir 1987).....................................................................24

Dennis v. Delta Air Lines, Inc.,
  2011 WL 4543487 (E.D.N.Y. 2011)............................................................15

E.E.O.C. v. Gaddis,
  733 F.2d 1373 (10th Cir. 1984)..................................................................21

Farash v. Cont'l Airlines, Inc.,
  574 F. Supp.2d 356, (S.D.N.Y. 2008) aff'd, 337 F. App'x 7 (2d Cir. 2009)................13, 14

Flanagan v. Aaron E. Henry Community Health Services Center,
  876 F.2d 1231 (5th Cir. 1989)...................................................................21

Flowers v. Crouch-Walker Corp.,
  552 F.2d 1277 (7th Cir. 1977)...................................................................21

Gorman v. Fiorello LaGuardia Cmty. Coll.,
  111 F.3d 123 (2d Cir. 1997)......................................................................25

Greene v. B.F. Goodrich Avionics Sys., Inc.,
  409 F. 3d 784 (6th Cir. 2005)....................................................................................8

Holcomb v. Iona College,
  521 F.3d 130 (2d Cir.2008)........................................................................................15

Kirkland v. City of Peekskill,
  651 F. Supp. 1225 (S.D.N.Y.), aff'd, 828 F.2d 104 (2d Cir. 1987)......................................25

Kosakow v. New Rochelle Radiology Associates, P.C.,
  274 F. 3d 706 (2nd Cir 2001)......................................................................................24

Lizardo v. Denny's, Inc.,
  270 F.3d 94 (2d Cir.2001)...............................................................................15, 19, 21

Lozada v. Delta Airlines, Inc.,
  2014 WL 2738529 (S.D.N.Y. 2014)..........................................................................10, 11

Mahmud v. Kaufmann,
  454 F. Supp. 2d 150 (S.D.N.Y. 2006)............................................................................23

McDonnell Douglas Corp., v. Green,
  411 U.S. 792 (1973)................................................................................................15

Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,
  7 F.3d 1085 (2d Cir.1993)..........................................................................................15

Miller v. Bank of America,
  600 F.2d 211 (9th Cir. 1979).......................................................................................21

Mitchell v. Nat'l Broad. Co.,
  553 F.2d 265 (2d Cir. 1977)........................................................................................25

Montessi v. American Airlines, Inc.,
  935 F.Supp. 482 (S.D.N.Y. 1996)...................................................................................5

Morales v. Trans World Airlines, Inc.,
  504 U.S. 374 (1992)..................................................................................................7

Nazarian v. Compagnie Nationale Air France,
  989 F.Supp. 504 (S.D.N.Y. 1998).................................................................................14

Norman v. Trans World Airlines, Inc.,
  2000 WL 1480367 (S.D.N.Y. 2000)..........................................................................10, 11

iv

Norton v. Sam's Club,
    145 F.3d 114 (2d Cir. 1998)...................................................................................19

Perez Rivera v. Hertz Corp.,
    990 F. Supp. 234 (S.D.N.Y. 1997).....................................................................22, 23

Perry v. Command Performance,
    1991 WL 46475 (E.D. Pa. 1991)........................................................................21, 23

Rombom v. United Air Lines, Inc.,
    867 F.Supp. 214 (S.D.N.Y.1994).......................................................................12, 14

Ruta v. Delta Airlines, Inc.,
    322 F.Supp.2d 391 (S.D.N.Y., 2004)..........................................................8, 9, 10, 11

Samuels v. Mockry,
    77 F.3d 34 (2d Cir. 1996)......................................................................................5, 6

Shen v. A & P Food Stores,
    1995 WL 728416 (E.D.N.Y. 1995)...........................................................................22

Stone ex rel. Estate of Stone v. Frontier Airlines,
    256 F. Supp.2d 28 (D.Mass., 2002).............................................................................8

Texas Dep't of Community Affairs v. Burdine,
    450 U.S. 248 (1981)..................................................................................................15

Weiss v. El AL Israel Airlines, Ltd.,
    471 F.Supp.2d 356 (S.D.N.Y. 2006)..........................................................................14

Western World Ins. Co. v. Stack Oil, Inc.,
    922 F.2d 118 (2d Cir. 1990)........................................................................................6

**Statutes, Rules & Regulations**

Rule 56 of the Federal Rules of Civil Procedure

Airline Deregulation Act of 1978

Federal Aviation Act of 1958

42 U.S.C. §§1981, 2000(a) and 2000(d)

49 U.S.C. §§40127(a), 40103(a)(1), 44902(b) and 41713(b)(1)

N.Y.S. Executive Law, Article 15 (NYSHRL)

U.S. Const., Art VI, cl 2

## PRELIMINARY STATEMENT

The defendant, **AMERICAN AIRLINES, INC.** ("American Airlines"), by and through its attorneys, RUTHERFORD & CHRISTIE, LLP, respectfully submits this Memorandum of Law in Support of its Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. American Airlines moves for summary judgment on the ground that the plaintiff's remaining causes of action are preempted by the Airline Deregulation Act of 1978 and/or the Federal Aviation Act of 1958. Further, the plaintiff cannot establish that she was affirmatively discriminated against by American Airlines so as to establish a viable claim under 42 U.S. Code § 1981 or N.Y.S. Executive Law, Article 15 (NYSHRL).

Additionally, the plaintiff cannot establish her claims against the defendant because the employees of the defendant who allegedly acted in a discriminatory manner did not hold supervisory positions. Finally, the New York State Department of Human Rights ruled that there was "no probable cause;" dismissed the plaintiff's complaint and the plaintiff failed to appeal same. During the process, the plaintiff had a full and fair opportunity to litigate same. Accordingly, in a review of this Honorable Court's prior decision on the defendant's Motion to Dismiss and, in furtherance of the findings in that decision, the plaintiff's claim in this lawsuit, must fail, due to the doctrine of *res judicata*.

The plaintiff filed a complaint with the New York State Division of Human Rights on or about August 21, 2015, alleging that the defendant had participated in discriminatory practices when its flight attendants "threatened" and "discriminated against [her]." On December 30, 2015, the New York State Division of Human Rights, after a thorough investigation, including the completion of a telephone interview of the plaintiff, receipt of correspondence from the defendant and receipt of

further correspondence in reply from the plaintiff, found "no probable cause" and dismissed the plaintiff's complaint. The plaintiff did not appeal the New York State Division of Human Rights' decision.

The plaintiff filed a complaint with the Department of Transportation on or around January 20, 2016 alleging that the defendant had participated in discriminatory practices when its flight attendants had issued "threats." On June 6, 2016, the Department of Transportation, after a thorough investigation, found no probable cause of discrimination and dismissed the plaintiff's complaint. The plaintiff did not appeal the Department of Transportation's decision.

On or about, February 5, 2016, the plaintiff initially brought suit against the defendant, American Airlines, Inc. in the United States District Court for the Eastern District of New York alleging a violation of 42 U.S. Code § 2000(a) and sought reimbursement for the costs of filing the lawsuit. In *lieu* of answering, the defendant filed a motion, pursuant to Rule 12(b)(6) to dismiss the plaintiff's complaint.

Rather than oppose the defendant's motion, the plaintiff moved, and was granted permission, to amend her complaint. In the amended complaint, the plaintiff alleged that American Airlines has violated 42 U.S. Code § 1981; 42 U.S. Code § 2000(a); 42 U.S. Code § 2000(d); 49 U.S. Code § 40127 (a) and N.Y.S. Executive Law, Article 15. The defendant again moved to dismiss the plaintiff's amended complaint. On March 31, 2017, the Honorable Pamela K. Chen issued a decision wherein her Honor dismissed all of the plaintiff's causes of action except permitted the plaintiff's 42 U.S. Code § 1981 and her New York Human Rights Law (NYHRL) claims to stand.

The defendant, American Airlines, respectfully submits this Memorandum of Law in Support of its Motion for Summary Judgment pursuant to Rule 56.1 of the Federal Rules of Civil

Procedure as the plaintiff has failed to plead a recognized legal theory against American Airlines upon which relief may be granted. Also submitted in support of the instant motion is the Declaration of David S. Rutherford, with exhibits annexed thereto, the Defendant's Rule 56.1 Statement of Undisputed Facts and the Defendant's Notice to a *Pro Se* Litigant Who Opposes a Motion for Summary Judgment.

## STATEMENT OF FACTS

On August 17, 2015, the plaintiff, an African American woman, was a passenger on American Airlines Flight No. 120 from Las Vegas, Nevada to John F. Kennedy International Airport ("JFK"), New York, New York. (Ex. A) After boarding the aircraft, the plaintiff took her seat and reclined the seat back, even though the boarding process was still continuing. (Ex. F, p. 29) While the plaintiff was aware that her seat would have to be placed in its upright position for takeoff, nonetheless, the plaintiff reclined her seat back. (Ex. F, pp. 29-30) The remaining passengers were attempting to "settle into" their respective seats around her. (Ex. G, p. 42 and Ex. H).

While the plaintiff was seated, she felt a "banging" on the back of her reclined seat. (Ex. A) She turned around and observed, whom she believed was Caucasian female passenger, "banging" on her reclined seat.(Ex. F, pp. 37-38) Accordingly, the plaintiff alerted a flight attendant that the passenger seated behind her had "banged" upon the back of her reclined seat. (Ex. F, p.60 ) The flight attendant observed that the other passenger was attempting to "settle in" and place her bag under the plaintiff's reclined seat. (Ex. G, p. 42 and Ex. H).

Both passengers were offered a seat change as a result of the plaintiff receiving a "bang" to the back of her seat. (Ex. G, pp. 42-43 and Ex. H). Both passengers were asked if they wanted to change seats. (Ex. G, pp. 42-43 and Ex. H). The other passenger was initially offered a seat,

however, the other passenger advised that she was seated with her family. (Ex. G, p. 43 and Ex. H). As such, she declined the offer. (Ex. G, p. 43 and Ex. H). Thereafter, the plaintiff was offered a seat change, accepted the seat change and was moved to another seat. (Ex. G, p.42 and Ex. H). The flight attendant did not use any racial slurs during this interaction. (Exs. A, B, D, E and F). The plaintiff was moved several rows away from the other passenger. (Exs. A, B, D, E and G, p.42).

After the seat change , but prior to takeoff, one of the flight attendants, Stephanie Taylor, traveled to the cockpit. (Ex. J) She alerted the Captain of the aircraft, Captain Steven Greco, that she believed that the plaintiff was cursing. (Ex. J) Captain Greco had been sitting in the cockpit of the aircraft, performing his pre-flight duties and preparing for the push-back of the aircraft and flight to JFK. (Ex. K).

When Ms. Taylor traveled to the cockpit, she advised Captain Greco that a female passenger was cursing on the aircraft. (Exs. J and K) However, she did not advise the specific words which were used or any further descriptions of anyone or anything else which was involved. (Ex. K). Rather, Ms. Taylor merely advised Captain Greco, as he was seated in cockpit, that "a female passenger was cursing." (Ex. K). Captain Greco did not perform any investigation, such as ask Ms. Taylor any questions; leave the cockpit; interview the cursing passenger or interview other passengers or crew members. (Ex. K). The Captain remained in the cockpit, taking Ms. Taylor's statement as valid.(Ex. K).

Captain Greco, upon merely hearing that a female passenger was cursing on the aircraft, had safety concerns for the passengers and the crew onboard the aircraft. (Ex. K). Captain Greco's concerns for the safety and security of the passengers and the crew caused him to issue the directive that the flight attendants should approach the cursing passenger and advise that passenger that if she

4

did not stop cursing, she would be removed from the aircraft. (Ex. K). After he advised the two flight attendants of this safety directive, Captain Greco returned to his pre-flight duties, remaining in the cockpit the entire time. (Ex. K).

The plaintiff was approached by two flight attendants in her new seat. (Exs. A ,B, D, E and F, p. 77) At the point she was approached by the two flight attendants, she had been seated several rows away from the other passenger for almost ten minutes. (Ex. D) The plaintiff was advised by the flight attendants that the Captain was instructing them to tell her that if she continued to curse, she would be removed from the aircraft. (Exs. A ,B, D , E and F p. 81) No racial slurs were used by the flight attendants as they issued the safety directive. (Exs. A, B, D, E and F).

Following the directive, the plaintiff did not curse and Captain Greco did not have to address any safety concerns after the flight attendants administered his directive. (Ex. K) The plaintiff was transported to New York, New York and there were no further incidents. (Exs. F, pp. 85-86 and K)

## STANDARD OF REVIEW

The Supreme Court has stressed that summary judgment should be considered an integral part of the Federal Rules and should not be disfavored as a technical shortcut. *See*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2552-53 (1986). The purpose of summary judgment is to isolate and terminate claims that are factually unsupportable. *Id.*, at 323-24 Further, it is well settled in the Second Circuit that "summary judgment is a useful device for unmasking frivolous claims and putting a swift end to meritless litigation." See *Montessi v. American Airlines, Inc.*, 935 F.Supp. 482, 484 (S.D.N.Y. 1996).

The standard for determining a summary judgment motion was reiterated by the Second Circuit in *Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir. 1996). In *Samuels*, the Court held that

"[s]ummary judgment is proper if, viewing all facts of record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Id.*; *see also* Fed. R. Civ. P. 56(c) (summary judgment standard). "The non-movant may defeat summary judgment only by producing specific facts showing that there is a genuine issue of material fact for trial." See *Samuels*, 77 F.3d at 36; *Celotex Corp.*, 477 U.S. at 322. In addition, Courts have found that mere conclusory allegations, speculation or conjecture will not assist a party opposing summary judgment. *See Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990).

## ARGUMENT

## POINT I

### THE PLAINTIFF'S REMAINING CLAIMS UNDER N.Y.S. EXECUTIVE LAW, ARTICLE 15 (NYSHRL) AND 42 U.S. CODE § 1981 ARE PREEMPTED AND, AS A RESULT, MUST BE DISMISSED

The plaintiff's claims under N.Y.S. Executive Law, Article 15 ( hereinafter "NYSHRL") and 42 U.S. Code § 1981 (hereinafter "the 1981 claim") are preempted in this case. [1] Preemption is provided for by the Supremacy Clause of the United States Constitution. The Supremacy Clause provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the Supreme Law of the Land; and the Judges in every state shall be bound thereby, any thing the Constitution or Laws of any state to the contrary notwithstanding. (U.S. Const., Art VI, cl 2).

"Preemption may be either express or implied, and is compelled whether Congress'

---

[1] At the time that the defendant filed its Motion to Dismiss the plaintiff's Amended Complaint, it also argued that the plaintiff's claims were preempted. In the Court's Decision, the Court declined to render a decision regarding the defendant's preemption arguments and, accordingly, the defendant renews its arguments in the instant motion.

6

command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992). In this case, the plaintiff's claims must be dismissed because they are preempted by Federal Aviation Acts, namely, the Airline Deregulation Act of 1978 (hereinafter " the ADA") and/or Federal Aviation Act of 1958 (hereinafter "the FAA"). Both of these Acts have a preemptory effect in this case and demand that the plaintiff's NYSHRL and 1981 claims be dismissed.

**POINT II**

**THE PLAINTIFF'S REMAINING CLAIMS UNDER 42 U.S. CODE § 1981
AND N.Y.S. EXECUTIVE LAW, ARTICLE 15 (NYSHRL)
ARE PREEMPTED BY THE FEDERAL AVIATION ACT OF 1958**

The plaintiff's NYSHRL and 1981 claims are pre-empted by the Federal Aviation Act of 1958, as the plaintiff was deemed a clear safety concern on board the aircraft. Congress enacted the Federal Aviation Act as "the United States Government has exclusive sovereignty of airspace of the United States." 49 U.S.C. § 40103(a)(1). "The Federal Aviation Act was enacted to create a uniform and exclusive system of federal regulation in the field of air safety." *Air Transport Association of America Inc. v. Cuomo*, 520 F.3d 218, 224 (C.A.2, 2008). "Shortly after it became law, we noted that the Federal Aviation Act was passed by Congress for the purpose of centralizing in a single authority-indeed, in one administrator-the power to frame rules for the safe and efficient use of the nation's airspace." *Id.* at 224. "The Federal Aviation Act requires that exclusive control of airspace management be concentrated at the national level." *Id.* at 224. "The intent to centralize air safety authority and the comprehensiveness of these regulations pursuant to that authority have led several other circuits (and several courts within this Circuit) to conclude that Congress intended to occupy the entire field and thereby preempt state regulation of air safety." *Id.* at 225. "The safety with

7

which Congress was primarily concerned is the operational and functional integrity of an aircraft-internally and externally-as it affects passengers and the public." *Stone ex rel. Estate of Stone v. Frontier Airlines*, 256 F. Supp.2d 28, 42 (D.Mass., 2002). "The Federal Aviation Act preempts the entire field of aviation safety through implied preemption." *Greene v. B.F. Goodrich Avionics Sys., Inc.*, 409 F. 3d 784, 795 (6th Cir. 2005). "The Federal Aviation Act and regulations promulgated pursuant to it establish complete and thorough safety standards for air travel, which are not subject to supplementation by .... state laws." *Id.* at 795.

Under the Federal Aviation Act, an air carrier may refuse to transport a passenger if it decides that said passenger poses a safety threat to the passengers and crew on board the aircraft. Specifically, regulation 49 U.S.C. 44902(b), indicates as follows:

> **Permissive refusal**--Subject to regulations of the Under Secretary, an air carrier, intrastate air carrier, or foreign air carrier may refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety.

New York Courts, both Federal and State, have examined a carrier's right, under this Federal Act, to refuse to transport a passenger due to safety concerns and deemed that, "a refusal to transport cannot give rise to a claim for damages under either federal or New York State law unless that carrier's decision was arbitrary and capricious." *Ruta v. Delta Airlines, Inc.*, 322 F. Supp.2d 391, 397 (S.D.N.Y., 2004).

In the seminal case of *Adamsons v. American Airlines, Inc.*, 58 N.Y. 2d 42 (1982), the New York Court of Appeals examined an airline's decision making process in its refusal to transport a passenger due to its belief that said passenger posed a safety threat. The Court's underlying opinion was that "[a]n airline's discretion to reject a passenger must be accepted if exercised in good faith and for a rational reason." *Adamsons v. American Airlines, Inc.*, 58 N.Y. 2d 42, 49 (1982).

In *Adamsons*, the airline refused passage to the plaintiff who had visible health concerns, requiring treatment, when it deemed the safety and health of the plaintiff and the remaining passengers was compromised and that the plaintiff could be considered a "safety" risk to both himself and the remaining passengers if he was permitted transport. The Court of Appeals reversed the trial verdict and granted summary judgment for the defendant airline, finding "....deference to the airline's judgment is understandable in light of the fact that the airline must often make such decisions on the spur of the moment, shortly before the plane takes off and, therefore, without the benefit of complete and accurate information." *Adamsons v. American Airlines, Inc.*, 58 N.Y. 2d 42, 47 (1982). The Court also opined that, "there are times when legitimate safety reasons require that the decision be based entirely on a passenger's prospective appearance and behavior." *Id.*

The District Courts have also analyzed the preempted effect of the FAA and the regulation 49 U.S.C. 44902(b), such as in the case of *Ruta v. Delta Airlines, Inc.*, 322 F. Supp.2d 391 (S.D.N.Y., 2004). *Ruta*, a case directly on point to the instant matter, involved what was believed by the crew to be a disruptive passenger. As in the case at bar, a flight attendant alerted the Captain of some details of the "disturbance" and, as a result of the minimal information provided, the Captain deemed the matter to be a safety risk and removed the passenger from the flight.

The District Court upheld the preemptory challenges in this case, finding that "a Captain of an airplane is entitled without further inquiry to rely upon a flight attendant's representations that a passenger might distract the flight attendant from performing his or her safety related duties." *Ruta v. Delta Airlines, Inc,* 322 F. Supp.2d 391, 397 (S.D.N.Y. 2004). "Furthermore, even if the flight attendant makes exaggerated or false representations to the Captain, the Captain is under no obligation to leave the cockpit to investigate the truthfulness of those representations." *Id.* at 398.

9

"The sincerity of the flight attendant's representations has no bearing on whether the Captain's decision was arbitrary and capricious." *Id.*

Accordingly, even if the flight attendant, Stephanie Taylor was incorrect in that the plaintiff was cursing, or she exaggerated the extent of the disturbance, the Captain did not investigate, nor did he have a duty to investigate, what action the plaintiff had been taking. Accordingly, under the holdings of *Adamsons* and *Ruta*, the plaintiff's claims are preempted and must be dismissed.

In *Norman v. Trans World Airlines, Inc.*, 2000 WL 1480367 (S.D.N.Y. 2000), a case strikingly similar to the case at bar, a flight attendant reported to the captain "that we have a passenger in the back in first class that's providing derogatory words towards me and in an unruly behavior." Based upon what the flight attendant reported to him, and because he felt that the conflict between the passenger and the flight attendant might pose a safety risk, the Captain exercised his discretion to refuse passage to the plaintiff. In granting summary judgment to the airline, the court noted that the captain was indeed entitled to rely on the flight attendant's representations that the passenger posed a potential safety risk and that the court's analysis as to whether an airline has properly exercised its discretion to remove a passenger "rests upon the facts and circumstances as known by the decision-maker at the time he formed his opinion ...." "The decision is not to be tested by other facts later disclosed in hindsight.

In *Lozada v. Delta Airlines, Inc.*, 2014 WL 2738529 (S.D.N.Y. 2014) a flight attendant reported to the captain that the plaintiff, a passenger who had boarded the aircraft, was intoxicated and engaging in highly disruptive behavior. The captain had her removed. In granting Delta's summary judgment motion, Judge Paul Oetken ruled that the plaintiff's claims were preempted by the Federal Aviation Act, which grants "the decision-maker substantial discretion to reject a

passenger if exercised in good faith and for rational reason." Citing, *Ruta v. Delta Airlines, Inc.,* 322 F. Supp.2d 391, 397 (S.D.N.Y. 2004). Specifically, Judge Oetken noted that "since the captain is in command of the aircraft but he has less intimate interactions with the passengers than his crew, a "captain of an airplane is entitled without further inquiry to rely upon a flight attendant's representations that a ... passenger might distract the flight attendant from performing his or her safety-related duties" quoting *Christel v. AMR Corp.,* 222 F. Supp.2d 335, 340 (E.D.N.Y. 2002).

Of particular significance to Judge Oetken in the *Lozada* case is the discretion to solely rely upon what is told to him in the cockpit. Thus, he wrote, "In arriving at this decision, it is ultimately irrelevant whether *Lozada* was actually intoxicated at the time of the incident." And in the *Ruta* case, Judge McMahon wrote that "even if the flight attendant makes exaggerated or false representations to the captain, the captain is under no obligation to leave the cockpit to investigate the truthfulness of those representations." 322 F. Supp. 2d at 398. "The sincerity of the flight attendant's representations has no bearing on whether the captain's decision was arbitrary and capricious." *Id.*; see also, *Norman v. Trans World Airlines, Inc.* 2000 WL 1480367.

Thus, the dispute as to whether the plaintiff was actually cursing or whether Stephanie Taylor accurately reported the situation to Captain Greco is irrelevant. All that is relevant is the decision that Captain Greco made based upon the information that was provided to him. The information provided to him was solely that there was a female passenger who was cursing. (Ex. K) Based upon that information, and that information only, he instructed the flight attendants to tell the passenger that if she did not stop cursing, she would be removed from the aircraft. No rational jury could find this to be arbitrary and capricious as a matter of law. Accordingly, all of plaintiff's claims are preempted by the Federal Aviation Act of 1958.

**POINT III**

**THE PLAINTIFF'S REMAINING CLAIM UNDER N.Y.S.
EXECUTIVE LAW, ARTICLE 15 (NYSHRL) IS PREEMPTED
BY THE AIRLINE DEREGULATION ACT OF 1978**

Congress enacted the Airline Deregulation Act (ADA) in 1978, which was "[t]o ensure that the states would not undo federal deregulation with regulations of their own," Congress included a federal preemption provision, Section 105, which is now codified at 49 U.S.C. §41713(b)(1). The provision reads, in pertinent part:

> "Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route or service of an air carrier that may provide air transportation under this subpart" 49 U.S.C. §41713(b)(1)

In the well cited case of *Rombom v. United Air Lines, Inc.*, 867 F.Supp. 214 (S.D.N.Y.1994), it was established that, in New York, the Courts should apply a three-part test to assess whether a tort claim should be preempted. As found in the holding of *Rombom*, first, the Court must initially determine whether the activity at issue in the claim is an airline service. See *Rombom* at 867 F.Supp. at 221- 22. In the case at bar, the issue took place during the boarding process and concerned whether the plaintiff could remain on board the aircraft. The service "directly" affected the manner in which the flight attendants were performing their duties because, again, this issue occurred during the boarding process and dealt with the seating of the plaintiff and whether she could remain on the seated on the aircraft.

Finally, under *Rombom*, the Court must decide whether the underlying tortious conduct was reasonably necessary to the provision of the service. Here, the conduct must be deemed reasonably necessary, as a flight attendant discussing seating with the plaintiff is a direct method to a flight

attendant performing her duties during the boarding process and during the seating process.

Farash v. Cont'l Airlines, Inc., 574 F. Supp.2d 356, (S.D.N.Y. 2008) aff'd, 337 F. App'x 7 (2d Cir. 2009) is a case directly on point, as in Farash, the plaintiff was alleging "rude and hostile" confrontations between himself and the flight attendant. In Farash, the New York District Court found that "[p]laintiff first alleges that the flight attendant requested that he move to another first-class seat to accommodate a father and son traveling together, and that his new seat was next to a federal Air Marshal. These claims are all related to the flight attendant's efforts to locate appropriate seat assignments and resolve seat conflicts. Such claims are clearly airline services." Farash v. Cont'l Airlines, Inc., 574 F. Supp.2d 356, 364 (S.D.N.Y. 2008) aff'd, 337 F. App'x 7 (2d Cir. 2009). Accordingly, the Court found, as it should find in the instant case that, even if a flight attendant commits "bad behavior," the actions should still be deemed "a service." In Farash, the plaintiff's state law claims were preempted and were dismissed.

Accordingly, even when the plaintiff maintains that she was "humiliated," her claims are still preempted. (Exs. A, B, and D) The flight attendants, while maybe "rude" or "humiliating," were carrying out a directive about a seating arrangement during the boarding process. They were carrying out a directive about a service in which they provide. Thus, this claim is clearly preempted, as it falls under the ADA.

Again, even if the plaintiff was "embarrassed" or "humiliated" by the flight attendants, speaking in a loud voice, in front of other passengers, it is of no matter. "[I]f a flight attendant asked a rambunctious passenger to be quiet, even in a rude way, that action would be reasonably necessary to the provision of a service." Farash v. Continental Airlines, 2008 WL 2276660 (S.D.N.Y.2008). Claims of "rude and unprofessional actions, such as treating passengers as children, were also

13

preempted as the actions were reasonable and not outrageous." *Rombom v. United Air Lines, Inc.*, 867 F.Supp. 214, 222 (S.D.N.Y.1994). "Rude communications and uncaring treatment between flight attendants and customers, when communications are designed to effect a service are preempted." *Farash v. Continental Airlines*, 2008 WL 2276660 (S.D.N.Y.2008)

In the case at bar, every aspect of the plaintiff's case regarding the treatment surrounding the verbal altercation with the other passenger, her reseating and her possible removal from the aircraft is preempted by the Airline Deregulation Act, as it clearly falls within the definition of a "service." Thus, any claim regarding the flight attendants' actions are preempted and the plaintiff cannot establish any cause of action, including NYSHRL or any theory based on the "rude behavior" and/or inability to provide better service on an American Airlines. This alleged discrimination directly deals with the service provided by the flight attendants. Therefore, the complaint against American Airlines should be dismissed. *(See also, Weiss v. El Al Israel Airlines, Ltd.*, 471 F.Supp.2d 356 (S.D.N.Y. 2006); *Nazarian v. Compagnie Nationale Air France*, 989 F.Supp. 504 (S.D.N.Y. 1998))

It is through the alleged "discriminatory" service that the flight attendants allegedly violated NYSHRL. NYSHRL is a state law which is in direct conflict with a federal law on this issue and, therefore, must yield to the federal law. Therefore, this cause of action is preempted and must be dismissed.

## POINT IV

### IF THIS HONORABLE COURT DEEMS THAT THE PLAINTIFF'S CLAIMS ARE NOT PREEMPTED, THE PLAINTIFF STILL CANNOT SUSTAIN A CLAIM UNDER 42 U.S. CODE § 1981

The plaintiff's Section 1981 claim must be dismissed because the plaintiff cannot establish that the representatives of American Airlines acted in a discriminatory manner against her. To

establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993). "When plaintiffs seek to draw inferences of discrimination by showing that they were similarly situated in all material respects to the individuals to whom they compare themselves, their circumstances need not be identical, but there should be a reasonably close resemblance of facts and circumstances." *Lizardo v. Denny's, Inc.,* 270 F.3d 94, 101 (2d Cir.2001).

In addition, as has been well established in the Federal Courts, there is a framework when examining discrimination cases. In the case of *Dennis v. Delta Air Lines, Inc.*, 2011 WL 4543487 (E.D.N.Y. 2011), the plaintiff, who, alleged racial discrimination, after she was not permitted to board the defendant airline's aircraft after the aircraft was full. In its decision, the Eastern District outlined the criteria for examining cases where 1981 claims of racial discrimination are alleged.

The Court noted that "the plaintiff bears the initial burden of establishing a prima facie case of discrimination." *Dennis v. Delta Air Lines, Inc.*, 2011 WL 4543487, 5 (E.D.N.Y. 2011), quoting, " *Holcomb v. Iona College,* 521 F.3d 130, 138 (2d Cir.2008). Once a plaintiff establishes a prima facie case, "the burden shifts to the defendant to articulate 'some legitimate, non-discriminatory reason' for its action." *Holcomb*, 521 F.3d at 138 (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff" *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

As will be discussed below, first, the plaintiff cannot establish her 1981 claim, because she and the other passenger were not "similarly situated." However, assuming *arguendo* that this Honorable Court finds that the plaintiff and the other passenger were similarly situated, the defendant had a legitimate, non-discriminatory reason for its actions. The plaintiff cannot prove otherwise and her claim must be dismissed.

A. *The Plaintiff and the Other Passenger Were Not Similarly Situated*

The plaintiff's 1981 claim initially fails because the plaintiff cannot establish that she and the other passenger were "similarly situated." The facts in this case demonstrate that the two passengers are "dissimilar" in two different ways. First, while the plaintiff, contrary to her statements made to the New York State Division of Human Rights, at least, in this lawsuit, has denied cursing at the other female passenger or using the "f-word" directly at her, it is clear that the flight attendants believed that the plaintiff was cursing on board the aircraft. (Compare Exs. D and F, pp. 48-53) Ms. Taylor was advised, either by passengers or other flight attendants, either of whom believed that they heard the plaintiff cursing during the flight. (Ex. J)

At this point, it can be said that a "decision" or "judgment call" was made that there was a safety risk. In fact, there are notations in the flight attendant's statements that the plaintiff was using profanity in" front of the other passengers" and that there was a "disturbance." (Ex. J) The safety situation was reported to the Captain, who has ultimate decision making ability on the aircraft. (Exs. J and K) The race of the plaintiff was not mentioned to the Captain. (Ex. K)

However, the plaintiff would like to maintain that the other passenger's behavior, that of "violently banging on the plaintiff's chair" is also a safety risk. Simply put, it is not. The two women were not both "safety risks." Looking to the evidence in this case, it can be observed that

16

the other passenger was merely "getting settled into her seat" and that the plaintiff's seat was admittedly reclined. (Ex F, pp. 29-30 and Ex. H),

This incident occurred during the boarding process. Passengers were attempting to take their respective seats and put their bags under the seats in front of themselves. (Ex. H) The plaintiff admitted that her seat was reclined. (Ex F, pp. 29-30) The plaintiff also testified that when she alerted the flight attendant to come over to address the situation, the flight attendant advised that the banging had occurred because the plaintiff's "seat was back" (Ex. F, p. 71). Further, the statements from the flight attendants also evidence that they were either told, or believed, that the "banging" was the result of the other passenger attempting to get "settled in." (Ex. H)

Accordingly, it has been established that the plaintiff was a safety risk by (at least believed to be by the flight attendants) for possibly cursing at other passengers in a "disturbed manner" and that the other passenger was not deemed a safety risk (again, deemed by the flight attendants) because she was just attempting to get properly seated. (Ex. J). Even if the flight attendants were wrong about the intent of the other passenger, the flight attendants believed that the other passenger was merely getting "settled in." (Ex. H) Accordingly, the intent of the flight attendants, which cannot be said to be discriminatory, was based upon the belief (or incorrect belief) that the other passenger was merely getting "settled in" and had bumped the plaintiff's seat because it was reclined. (Ex. H)

However, even if this Honorable Court deems that the other passenger was a "safety risk" because she "banged" on another passenger's chair, it should be noted that the two passengers were separated. If both passengers were "safety risks," they still are not "similarly situated." The plaintiff was a "safety risk" to the passengers and crew. As stated by the flight attendants, the plaintiff was,

at least, thought to be cursing and disruptive and could possibly be a threat to the passengers and crew, even after she had been moved to another seat. The comment made to the plaintiff was that if she "continued to curse," she would be removed from the aircraft. She was deemed a risk to everyone on the aircraft because she was believed to have been "continuing to curse." As a result, she was warned that she would have to be removed from the aircraft to ensure the safety of the aircraft.

The "Caucasian" passenger, who, if it could be considered, was a safety risk, would only have been a safety risk to the plaintiff. She was not to be "warned to stop continuing to bang upon the plaintiff's seat" because she no longer was, and no longer could. That "risk" was negated because the two passengers had been separated and the "banging" incident was resolved. The plaintiff had been, admittedly, sitting in her seat, rows away from the "Caucasian" passenger for approximately ten minutes. (Exs. A and D).

Additionally, the flight attendant had already observed the plaintiff's seat reclined and deemed the "Caucasian" passenger to be merely "settling in" prior to giving the Captain's directive. (Ex. H). Finally, the plaintiff is no longer sitting in front of the "Caucasian" passenger who, hypothetically, could be "in harms way" for the "Caucasian" passenger to "bang upon her seat," even if the flight attendant did believe that the "Caucasian" passenger had maliciously banged upon the plaintiff's seat. Therefore, the plaintiff and the "Caucasian" passenger are not similarly situated and, from the outset, the 1981 claim fails.

B.  *The Defendant Can Demonstrate a Non-Discriminatory Reason for Its Behavior*

Even if the plaintiff could overcome her burden of establishing that she and the "Caucasian" passenger were "similarly situated," the defendant can demonstrate a non-discriminatory reason for

its behavior. The Second Circuit examined a defendant's behavior in deciding whether it acted in a discriminatory manner in *Lizardo v. Denny's, Inc.*, 270 F.3d 94 (2d Cir. 2001). While not an aviation case, this similarly "services-related" case, involving a restaurant, which allegedly discriminated against various minorities allegedly based upon their race, had the grant of its summary judgment motion affirmed by the Second Circuit. In doing so, the Second Circuit found that, "[p]laintiffs have done little more than cite to their mistreatment and ask the court to conclude that it must have been related to their race. This is not sufficient. ...... [a]nti-discrimination law 'does not make [defendants] liable for doing stupid or even wicked things; it makes them liable for *discriminating* .'" *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001), quoting, *Norton v. Sam's Club*, 145 F.3d 114, 120 (2d Cir. 1998)

As stated above, the flight attendants observed the plaintiff to be a safety risk but did not deem the "Caucasian" passenger a safety risk. Rather, they deemed the "Caucasian" passenger to merely be "settling in." In addition, the Captain did not even know the race or any descriptives of the "Caucasian" passenger and was only alerted to the safety risk that was posed to the aircraft's passengers and crew (the cursing plaintiff). Again, even if the flight attendants were wrong, and the "Caucasian" passenger was not merely "settling in" and, rather, had intentionally pushed the plaintiff's seat, they had a non-discriminatory reason to tell the Captain about the cursing. There was no reason to the tell the Captain about the banging because: 1) they thought that it was the result of the plaintiff's seat being reclined and 2) the two passengers had been separated. Of more importance, the plaintiff cannot establish that the flight attendants acted with discriminatory practices.

The defendants had a reasonable reason; i.e. their belief that the two behaviors were different, and acted accordingly. The flight attendants either witnessed the "Caucasian" passenger getting

situated or were told about it. They either heard the plaintiff cursing or were advised of it. Most importantly, the Captain was only advised of the safety concern to the aircraft. (Ex. K) He was not advised that another passenger, who was now separated from the plaintiff, had banged on a seat when attempting to get "settled in." (Ex. K) Even if that information is inaccurate, that is the information behind the intentions of all of the crew's actions and alleged "inactions." When all of the crew's intentions and their supporting beliefs are reviewed, it can be observed that there was a reasonable, non-discriminatory reason for the flight attendant to advise the Captain of the cursing, for the crew to merely separate the two passengers and proceed with the pre-flight activities and for the plaintiff to be warned that, if she continued to curse in her new seat, that she would be removed from the aircraft.

The plaintiff, who now has the burden shifted upon herself, cannot establish that the flight attendant did not think that the other passenger was just "getting settled in" and, even if she denies that she cursed, she cannot deny that there was a "disruption" between herself and the other passenger. She cannot establish that she and the "Caucasian" passenger were not the same type of threat, if the other passenger could even be deemed a threat.

The plaintiff has denied in this lawsuit that she cursed or used the "f-word." In her initial pleadings and statements, she indicates that she only uttered a "short phrase." (Ex D) According to the records of the New York State Department of Human Rights, the plaintiff admittedly used the "f-word" and the "Caucasian" passenger did not use any profanity. (Ex D) The plaintiff did not deny cursing until the time of the completion of her deposition. (Compare Exs. D and F, pp. 48-53) Even when presented with the opportunity throughout the case, she did not deny it, such as in opposition to the Defendant's Motion to Dismiss to her Amended Complaint or any other document

20

to this Honorable Court or defense counsel. The defendant submits that, for the purposes of this motion, even if the plaintiff attempts to argue that she did not use the "f-word" or curse on board the aircraft, at any time, it is irrelevant, because the defendant's crew and Captain believed that she did. The defendant's employees were advised that she had cursed in front of other passengers.

If the defendant merely misinterpreted that the plaintiff was cursing, then, under cases such as, *Lizardo v. Denny's, Inc.*, 270 F.3d 94, (2d Cir. 2001), "bad behavior" does not warrant a finding of discrimination. The defendant was merely "rude," however, even "bad behavior" cannot sustain the plaintiff's 1981 claim in this case. As stated above, the plaintiff cannot establish her 1981 claim and her complaint must be dismissed.

## POINT V

### THE PLAINTIFF CANNOT SUSTAIN A CLAIM UNDER 42 U.S. CODE § 1981 BECAUSE THE FLIGHT ATTENDANT WHO ALLEGEDLY COMMITTED THE DISCRIMINATORY ACTS DID NOT HOLD A SUPERVISORY POSITION

The finding of intentional discrimination necessary to prevail on a Section 1981 claim against an employer requires discrimination by a "supervisory employee with control over the operations of the employer and the contractual status of the plaintiff." *Perry v. Command Performance*, 1991 WL 46475 (E.D. Pa. 1991). "An employer is liable under both Title VII and Section 1981 'where the action complained of was that of a supervisor, authorized to hire, fire, discipline or promote, or at least to participate in or recommend such actions, even though what the supervisor is said to have done violates company policy.'" *E.E.O.C. v. Gaddis*, 733 F.2d 1373, 1380 (10th Cir. 1984), citing, *Miller v. Bank of America*, 600 F.2d 211, 212 (9th Cir. 1979), see also, *Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277, 1282 (7th Cir. 1977); *Flanagan v. Aaron E. Henry Community Health Services Center*, 876 F.2d 1231 (5th Cir. 1989).

21

Here, plaintiff's allegations involve the actions of the No. 4 flight attendant, Stephanie Taylor. It is undisputed that the individual who had supervising authority over the flight, and the authority to remove, or threaten to remove, the plaintiff from the flight was the Captain, Steven Greco. It is also undisputed that Captain Greco was only advised that a female passenger was cursing in the back of the aircraft, that he never knew the race of the passenger and that he simply instructed the flight attendants to tell the passenger that if she did not stop cursing, she would be removed from the aircraft. Thus, even if the plaintiff's allegations are to be accepted as true, and that Flight Attendant Stephanie Taylor singled the plaintiff out because she was black, her Section 1981 claim must still fail as a matter of law because the alleged discrimination did not take place at the supervisory level. Captain Greco's actions were non-discriminatory as a matter of law.

Two decisions, one from the Eastern District of New York and the other from the Southern District of New York, are particularly instructive. In *Shen v. A & P Food Stores*, 1995 WL 728416 (E.D.N.Y. 1995) the plaintiffs alleged that A & P discriminated against them by refusing to sell them groceries because they were Chinese. In denying A & P's motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), Judge Block held that the complaint alleged racist activities by management level employees. Noting that "an employer is liable under ... Section 1981 'where the action complained of was that of a supervisor,'" Judge Block denied the motion because "the complaint does not just allege that low level employees were involved in the racist activity, but also implicates an A & P manager." In *Perez Rivera v. Hertz Corp.*, 990 F. Supp. 234 (S.D.N.Y. 1997) the plaintiffs brought suit against a car rental agency that had allegedly refused to rent to them because they were Puerto Ricans. Summary judgment was denied by Judge Barbara Jones because the individual who made the ultimate decision to refuse to rent a Hertz care to the plaintiffs "was an

area manager acting in a supervisory capacity." 990 F. Supp. at 238.

In contrast, in the *Perry* case cited above, a hair stylist at a salon refused to service the plaintiff, stating "I don't do black hair." In finding for the defendant salon on the plaintiff's Section 1981 claims, the court held that the stylist at issue was "a non-supervisory employee of Defendant who exercised no management control of Defendant's salon, did not have a relationship to Defendant such that the deliberate acts of [the stylist] were the deliberate acts of Defendant." *Perry* 1991 WL 46475.

As it is undisputed that the alleged perpetrator of the discrimination in this case was the No. 4 Flight Attendant Stephanie Taylor, and that the person with supervisory authority, who made the decision to warn the plaintiff about her cursing, was Captain Greco and that Captain Greco was only told that there was a female passenger who was cursing and never knew her race, there was no intentional discrimination as a matter of law and plaintiff's Section 1981 claims must be dismissed.

## POINT VI

### THE PLAINTIFF'S CLAIM UNDER N.Y.S. EXECUTIVE LAW, ARTICLE 15 (NYSHRL) ALSO FAIL BECAUSE THE STANDARDS GOVERNING 42 U.S. CODE § 1981 AND N.Y.S. EXECUTIVE LAW, ARTICLE 15 (NYSHRL) ARE THE SAME AND SHE CANNOT SUSTAIN EITHER CLAIM AS RESULT

Since the plaintiff cannot sustain her 1981 claim, her NYSHRL claim, too, fails since this claim has the same standards. This Court has also held that "the standards governing claims pursuant to Section 1981 and the NY HRL are identical." *Aboeid v. Saudi Arabian Airlines Corp.,* 959 F. Supp.2d 300, 308 (E.D.N.Y. 2013), citing *Perez Rivera v. Hertz Corp.,* 990 F. Supp. 234, 236 (S.D.N.Y. 1997); see also *Brown v. City of Syracuse,* 673 F.3d 141, 150 (2d Cir. 2012); *Mahmud v. Kaufmann,* 454 F. Supp. 2d 150, 157 (S.D.N.Y. 2006). Since plaintiff's Section 1981 claims fail

as a matter of law, so must her claims asserted under the New York State Human Rights Law.

## POINT VII

### THE PLAINTIFF'S CLAIM UNDER N.Y.S. EXECUTIVE LAW, ARTICLE 15 (NYSHRL) SHOULD BE DISMISSED BASED ON *RES JUDICATA*

The plaintiff's Amended Complaint should also be dismissed based on a theory of *res judicata* in that a prior determination was made upon the same facts by the New York State Division of Human Rights.[2] That Judicial Body made a determination of "no probable cause," a decision which was not appealed by the plaintiff. The plaintiff had a "full and fair opportunity" to litigate the case, as she was part of a telephone interview wherein she pled her case, going beyond the four corners of her complaint. (Ex. D)

In addition, this Honorable Court is directed to the complete file from the New York State Division of Human Rights. (Ex. D) As can be observed, the plaintiff reviewed the defendant's response to the complaint and was given the opportunity to submit a reply. (Ex. D) Accordingly, under the findings of *DeCintio v. Westchester County Medical Center,* 821 F.2d 111 (2nd Cir 1987) and, in contrast to *Kosakow v. New Rochelle Radiology Associates, P.C.,* 274 F. 3d 706 (2nd Cir 2001), the plaintiff had the opportunity to contest the evidence which was submitted against her and the determination was based upon significant evidence. (Ex. D) Therefore, now that discovery has yielded further findings that the plaintiff did have a "full and fair opportunity" to litigate her claim and a finding of "no cause" has been determined, the plaintiff's claim should be dismissed under a

---

[2] The defendant put forth a similar argument in its Motion to Dismiss and Justice Chen denied that portion of the motion finding "the record did not reflect" several factors as outlined under *DeCintio v. Westchester County Medical Center,* 821 F.2d 111 (2nd Cir 1987) and *Kosakow v. New Rochelle Radiology Associates, P.C.,* 274 F. 3d 706 (2nd Cir 2001). It is respectfully submitted that, now that discovery has been completed, the "record" can now reflect ample evidence in support of the defendant's position and, as such, the defendant respectfully renews this argument before the Court.

theory of *res judicata*. See, *Gorman v. Fiorello LaGuardia Cmty. Coll.*, 111 F.3d 123 (2d Cir. 1997); *Kirkland v. City of Peekskill*, 651 F. Supp. 1225 (S.D.N.Y.), aff'd, 828 F.2d 104 (2d Cir. 1987); *Mitchell v. Nat'l Broad. Co., 553 F.2d 265*, (2d Cir. 1977) (finding that, "[when there is] a proceeding before an administrative agency. ....[the] Res judicata effect may attach to determinations of administrative agencies in appropriate circumstances."*Id*, at 268.)

## CONCLUSION

As illustrated above, the plaintiff's claims cannot be sustained, as they are preempted by the Federal Aviation Act in 1958 and the Airline Deregulation Act of 1978. Regardless, she cannot demonstrate discriminatory intent. For the foregoing reasons, it is respectfully requested that this Honorable Court issue an Order pursuant to Rule 56 of the Federal Rules of Civil Procedure dismissing the plaintiff's Complaint in its entirety, together with costs and disbursements, and for such other and further relief as this Court may deem just and proper.

Dated: New York, New York
July 31, 2018

Respectfully submitted,

RUTHERFORD & CHRISTIE, LLP

By: _____
David S. Rutherford, Esq.
Attorneys for Defendant
AMERICAN AIRLINES, INC.
800 Third Avenue, 9th Floor
New York, New York 10022
(212) 599-5799
Our File No.:3748.418

To:    Ms. Alecia James
       Plaintiff *Pro Se*
       2358 Atlantic Avenue, Apt. 2B
       Brooklyn, New York 11233